# THE HOME INSURANCE CO. OF NEW YORK

## *v.*

## SAMUEL FAVORITE *et al.*

1. CONTRACTS—*interpretation.* Where a contract is executed which refers to and makes the conditions of another instrument a part of it, the two will be construed together as the agreement of the parties.

2. SAME—*pleadings—demurrer.* If a suit is brought upon a contract which recites that it is subject to the conditions of another instrument, the failure to set out the terms and conditions of the latter in the declaration, and an averment of compliance therewith, or an excuse for non-compliance, should be taken advantage of by demurrer, and not by plea.

3. If a defendant sets up as a defense in his pleas, the conditions of an instrument referred to in the contract sued on, and avers a breach of the conditions, the plaintiff should, if he desires to raise the question as to whether the conditions form a part of the contract sued on, demur to the pleas, and not traverse them.

4. Where a defendant sets up conditions to, and a breach thereof, as a defense to an action brought upon a contract, and the plaintiff replies to the pleas, traversing the same, it is an admission that the facts set forth in the pleas constitute a defense, and it would be error to refuse the defendant permission to prove the truth of his pleas.

5. SAME—*how far usage governs in their construction.* To some extent at least, surrounding circumstances aid in the interpretation of all agreements and written contracts. It is only by a knowledge of such things, that the full force of the language used can be apprehended.

6. Where a contract is entered into, the parties are supposed to have reference to the known usage and customs which enter into and govern the business or subject matter to which it relates, unless such presumption is rebutted by the agreement itself.

7. Where a contract of insurance refers to a policy, which both parties knew had no existence, to define the conditions of the contract, and where it is apparent that both understood that the agreement was to be governed by the same terms and conditions as such an instrument would contain if in existence, the contract will be governed by the uniform and settled custom of the company with reference to the conditions contained in like policies.

APPEAL from the Circuit Court of Cook county; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

The opinion states the facts.

Mr. O.B. SANSUM and Messrs. HITCHCOCK & DUPEE, for the appellants.

Mr. J. N. STILES, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action of assumpsit, brought by Samuel Favorite and Calvin M. Favorite, in the Circuit Court of Cook county, against the Home Insurance Company of New York, on this instrument:

"HOME INSURANCE COMPANY OF NEW YORK, }
$5,000.    AGENCY OFFICE, S. W. COR. LASALLE AND RANDOLPH STS. }
(No. 1.)      CHICAGO, August 23d, 1865. }

This certifies that S. Favorite & Son are insured under and subject to the conditions of Policy No. 12, 261, issued by the 'Home Insurance Company of New York,' in the sum of five thousand dollars, on hogs, cattle, and the product of the same, and on salt, cooperage, boxes, and articles used in packing, their own or held by them in trust, or on commission, or sold but not delivered, contained in their stone and frame packing establishment, sheds and yard adjoining, situate on the South branch of the Chicago River, Chicago, Ill., for two months, to wit: from the 23d day of August, 1865, to the 23d day of October, 1865, (at 12 o'clock at noon,) Loss, if any, payable to their order hereon.

Amount insured, $5,000. Rate, 100-30 per cent. Premium, $15, paid.

{ U. S. Int. }
{ Rev. Stamp, }     MILLER & WILLMARTH,
{ 25 cents. }           *Agents.*"

The declaration contained two counts, in which plaintiffs proceed upon the instrument as containing all the terms and conditions of the contract of insurance. It is therein averred, that the policy referred to was never issued. The loss of the property by fire is averred; that notice of the loss was given to the defendants, and that plaintiffs furnished proofs of the same; and that plaintiffs had kept and observed all things by them required to be kept and observed, by this agreement.

On the trial in the court below, appellees proved that it was the custom to give such certificates; and when called for, the

company issued a policy containing the usual terms and conditions. That had appellees called for one they would have received such a policy. That a policy had been talked of with the agent, but appellees declined taking such a one. The destruction by fire of the packing house, barrels and lard tierces, and about two hundred tons of coal, was proved. They also proved the value of this property. That the barrels and tierces were stored on commission, and that the coal belonged to appellees. That it was used in slaughtering, rendering lard and tallow, and for warming the building to prevent the freezing of animals in cold weather, and that it was necessary for those purposes.

Appellants offered in evidence a blank policy of insurance, which was shown to embrace the usual terms and conditions contained in such instruments, issued by them at the time this certificate was given, but the court, on the objection of appellees, excluded it from the jury, and an exception was taken. The blank policy thus offered, contained a condition that if any other insurance should be effected in any other company without the written assent of appellants, endorsed on the policy, that it should be null and void.

A large number of instructions were given for appellees by which the jury are, among other things, informed, that the certificate given by appellants to appellees was a contract of insurance, on the property described, for the period of two months, and if they believe the property was on the premises and destroyed by fire within that time, that appellants were liable; and that if there was no such policy in existence, as that referred to in the certificate, then such policy formed no part of the contract, and the certificate was a legal, complete and valid contract of insurance, and would authorize a recovery, if there was a balance due on property destroyed by fire, and covered by the contract. Appellants, in their instructions, asked the court to give to the jury the reverse of

the rules announced by appellees' instructions, but the court refused, and they excepted.

The refusal of the court below to permit appellants to introduce the blank copy of the policy, and the refusal to give their instructions, present the first question which we propose to consider. If such a policy formed a part of the contract, which was made and delivered, the failure to set out its terms and conditions in the declaration, and to have averred a compliance therewith, or an excuse for a non-compliance, should properly have been taken advantage of upon demurrer. So that if such terms and conditions formed no part of the contract, then appellees should have demurred to appellants' pleas in which the conditions and their breach were set up as a defense. And having been traversed, it was error in the court below to refuse to permit appellants to prove the truth of their pleas. By replying to these pleas, appellees admitted that the facts set forth constituted a defense. Had a demurrer been interposed at either of these stages in the progress of the case, the question would have then been presented, which is brought before us for decision on the admissibility of evidence, and the giving and refusing of instructions.

Inasmuch as the case must be remanded for further proceedings, we shall, waiving all questions as to the evidence and instructions under the pleadings, determine whether the reference in the contract to policy No. 12,261, made it, if in existence, a part of the agreement, or if not in existence, it made the terms and conditions of policies issued by appellants, in such cases, a part of the contract. It is not controverted that had there been such a policy, it would have constituted a part of, and governed this contract. But it is insisted that as there was at the time no such instrument, all reference to it must be rejected as without force or meaning—as mere surplusage. That the parties to the contract, at the time it was entered into, intended it to perform the office of explaining the meaning of the contract, there would seem to be no question.

If that intention has failed, it is because some stern rule of law has intervened to defeat their intention. And that the instrument constituted a contract of insurance, there seems to be no doubt; but what its terms and conditions are, is the question now to be determined.

There seems to be no doubt, that it was the uniform custom of this, as well as other companies, to give certificates to the insured, on his payment of the premium, and in them to refer to a policy for the terms, as though it had been issued, and to afterwards make out one in the form used in such cases, and it is equally clear, that this company were in this habit, and it appears to have been their custom to issue certificates in the same form as that read in evidence, and if desired, to subsequently fill up and deliver a policy of the number referred to in the certificate, containing the terms and conditions usual in such cases. And it seems that appellees were aware of the custom; they had been in the habit of insuring in this manner, with this company for several years previously. Had this contract stated that the insurance was on the terms and conditions usually contained in their policies insuring such property, no one would have doubted that evidence of their terms and conditions could have been heard to fix the meaning of the agreement. That would, in such a case, be a legitimate mode of ascertaining the intention of the parties to the agreement.

To some extent at least, surrounding circumstances, usages and customs, govern in the interpretation of all agreements and written contracts. It is only by a knowledge of such things, that the full force of the language employed can be apprehended. Where a contract is entered into, the parties are supposed to have reference to the known usage and custom which enters into and governs the business, or subject matter to which it relates, unless they rebut such a presumption by the agreement itself. The parties in this case referred to a policy, which both knew had no existence; and it is

perfectly apparent that they both understood the agreement was to be governed by the same terms and conditions as such an instrument would contain if in existence, and they both must have known, that by the uniform and settled custom of the company, what were the terms and conditions of such policies. There can be no doubt that such was their intention and understanding, and we must hold, that this is the effect of the reference to a policy in the agreement. The giving of a particular number for the policy cannot matter, when we see that the parties knew that no such policy existed, and probably never would exist.

It is, however, urged, that the case of *Clayton* v. *Lord Nugent*, 13 Mees. & W. 198, governs this case. In that case a testator, having written his will, in which he devised his land to "K" first, then to "L," then to "M," &c.; and on a slip of paper pasted into and forming part of the will when it was attested, he stated, that the key and index to these letters, initials, &c., was in a certain writing case, on a card. A card was found, after his death, at the place indicated, in the handwriting of the testator, signed by him, and dated after the attestation of the will. It was, however, different, from that named in the will, but it named the persons referred to and represented by the letters. It was held, that the card which was found after his death, was inadmissible in evidence to show who were meant by the several letters. The law requires wills to be written and attested, and as this portion of what was claimed to constitute a part of it, was written afterwards and was unattested, it could not be known that the persons named in the card, were the persons intended as devisees when the will was made. It might have been that the testator had changed his mind, and substituted other persons as devisees, and if so, it was an entire change of the will, and in effect a new and different one, entirely unattested.

In this case, however, there could be no change of the terms of the instrument referred to by the agreement. They were

agreed to and fixed by the parties, hence there is a clear and broad distinction between the two cases. And we do not think that is an authority in this case.

It is again urged, that appellees are not entitled to recover for the loss of the cooper's ware, owned by Cole and Sullivan, on storage with them, at the time of its destruction, as it was not on commission or held legally and technically in trust. In the case of *Stilwell* v. *Staples*, 19 N. Y. 401, it was held, that a policy of insurance upon goods, "the property of the insured, or held by him in trust," covers cloth intrusted to him for the purpose of being manufactured into clothing. The court say, "It is quite apparent that the words 'in trust,' as used, are not to be taken in any strict or technical sense, which would limit their operation to cases where the title to goods had been vested in a trustee, subject to some specific trust, to be executed by him, for several reasons. In the first place, they would be entirely unnecessary for any such purpose, and would add nothing to the force of the policy. Again, the structure of the clause itself shows the meaning to be different. The antithesis shows, that the words 'in trust,' are meant to cover goods not the property of the insured. But goods held in trust in the technical sense suggested, would be as much his property, as between him and the insurer, as those belonging to him in his own right." The reasoning of the court in this case is sound and fully covers the objections raised in the case at bar. We are therefore of the opinion, that the contract of insurance covered property entrusted to appellees to be stored for a compensation.

The only remaining question is, whether this contract, by the language "and articles used in packing them down," embraced the coal which was destroyed. If it was necessary to be used in packing, then it was undeniably covered by the terms of the agreement. But whether it, or any part of it, was intended for such a purpose, or if so, to what extent, was a question to be determined by the jury. If it appeared that

it was intended to be used for other purposes, or that it was not necessary for packing purposes, it was not embraced in the contract of insurance. The contract only covered such articles as are used in packing, their own hogs, cattle, etc. But, for the reasons given, the judgment of the court below must be reversed, and the cause remanded for further proceedings, not inconsistent with this. opinion.

*Judgment reversed.*