Decided at PENDLETON, 13 August, 1898.

## SPROUL *v.* WESTERN ASSURANCE CO.

[ 54 Pac. 180 ]

1. AGREEMENT TO INSURE — PRESUMPTION AS TO FORM OF POLICY.— Where nothing is stipulated in a preliminary agreement to insure so far as it respects the kind of policy to be issued, the law presumes that the parties contemplated the policy ordinarily employed by the company to cover property of the kind designated in the agreement, and this whether insured sues in equity for specific performance of the agreement and for damages in pursuance thereof, or at law directly on the agreement for damages for a breach thereof in neglecting to issue the policy.

2. INCUMBRANCES — WAIVER OF CONDITIONS OF POLICY.— Where, in the course of the negotiation of a preliminary agreement for the issuance of a policy, no inquiry is made touching incumbrances, and no intimation is given applicant that they would affect the insurance, the denial of the agreement and the withholding of the policy by the company waives a condition in the policy

NOTE.— The validity of oral contracts of insurance is considered, with a collection of the authorities, in the following annotated cases: *Ruggles* v. *American Ins. Co.*, ( N. Y.) 11 Am. St. Rep. 674 ; *Long* v. *North British Ins. Co.*, ( Pa.) 21 Am. St. Rep. 879 ; *Croft* v. *Hanover Ins. Co.*, ( W. Va.) 52 Am. St. Rep. 902 ; *Newark Machine Co.* v. *Kenton Ins. Co.*, ( Ohio ) 22 L. R. A. 769.— REPORTER.

against incumbrances: *Koshland* v. *Home Ins. Co.*, 31 Or. 321, and *Koshland* v. *Hartford Ins. Co.*, 31 Or. 402, applied.

3. Waiver of Proofs of Loss.—A denial of an oral contract to insure followed by a refusal to deliver a policy, is a waiver of any condition or rule requiring proofs of loss: *Hardwick* v. *State Ins. Co.*, 20 Or. at p. 557, applied.

From Umatilla: Stephen A. Lowell, Judge.

Action by Thomas J. Sproul against the Western Assurance Company. From a judgment in favor of plaintiff, defendant appeals.

REVERSED.

For appellant there was a brief over the names of *Balleray & Hailey*, with an oral argument by *Mr. John J. Balleray*.

For respondent there was a brief over the names of *Carter & Raley*, with an oral argument by *Mr. Raley*.

Mr. Justice Wolverton delivered the opinion.

This is an action on an alleged oral preliminary contract for insurance. The complaint, after showing the ownership of the property and its value, states, in brief, that on August 20, 1896, while plaintiff was such owner, defendant by verbal contract insured the property against loss or damage by fire in the sum of $850 for a period of two months, in consideration of a premium of $12.75; that by the terms of the agreement defendant undertook to write up and deliver to plaintiff a policy of insurance covering said property within a reasonable time, upon the delivery of which plaintiff was to pay the stipulated premium; that a portion of said property was afterwards consumed by fire and plaintiff's damages under the contract were $650, for which amount he prays judgment. A tender of the premium and a demand for the policy on the part of the plaintiff and a

refusal by the defendant is averred, as is also proof of loss and a compliance in all other respects by plaintiff with the terms of said contract.    The defendant contro- verts all the material allegations of the complaint except those touching the making and furnishing proof of loss ; and for a further and separate defense alleges, in sub- stance, that whatever verbal contract or agreement, if any, was made or entered into between plaintiff and defendant, its provisions contemplated the issuance by the defendant to plaintiff of one of its regular printed forms of policies usually employed by it to cover prop- erty of the nature alleged to have been the subject of insurance, which if issued would have contained a con- dition that said policy, unless otherwise provided by agreement indorsed thereon or added thereto, should be void if the subject of insurance be personal property and be or become incumbered by chattel mortgage, and that in violation of such condition the property was so incum- bered during all the times stated in the complaint, and that the existence of such incumbrance was unknown to the defendant or its agents, and that no agreement was made or entered into consenting to said incumbrance. The reply denies that such a condition constituted any part of the verbal contract or agreement, and sets up matter intended to operate as a waiver by defendant of the alleged condition.

At the trial the court instructed the jury, among other things, that the defendant company could claim no exemption from liability on account of any provision the policy might or would have contained if it had been issued, and refused an instruction asked for to the effect that if the jury should find from the evidence that noth- ing was said by plaintiff or the defendant's agent at the time the alleged verbal agreement was entered into con- cerning the kind of written policy which was in contem-

plation by the parties, the presumption would be that
they had in mind the usual and ordinary policy then in
use by the insurer by which it usually covered that
species of property.   The giving of the former and the
refusal of the latter instruction form the basis for the
principal assignment of error.

Two remedies seem to have grown up and are now
well established by authority for redress upon a prelimi-
nary oral contract for insurance of the nature of the one
here involved.   One is in equity, to require a specific
performance of the agreement to issue the policy; and
having acquired jurisdiction for that purpose the court
will, in order to avoid a multiplicity of suits, administer
full relief and decree a recovery for the amount of the
loss sustained :   *Baile* v. *St. Joseph Insurance Co.*, 73 Mo.
371 ; *Eames* v. *Home Insurance Co.*, 94 U. S. 621 ; *Com-
mercial Mut. Insurance Co.* v. *Union Mut. Insurance Co.*,
60 U. S. ( 19 How.) 318 ; *Croft* v. *Hanover Insurance Co.*,
40 W. Va. 508 ( 52 Am. St. Rep. 902, 21 S. E. 854);
*McCann* v. *Ætna Insurance Co.*, 3 Neb. 198 ; *Insurance
Co.* v. *Colt*, 87 U. S. ( 20 Wall.) 560.   The other by an
action at law directly upon the oral or verbal agreement,
and the relief administered will be damages measurable
by the loss sustained to the property covered by reason
of its injury or destruction by fire, under the terms,
limitations and conditions of the agreement :   *Campbell*
v. *American Insurance Co.*, 73 Wis. 100 ( 40 N. W. 661 );
*Mobile Insurance Co.* v. *McMillan*, 31 Ala. 711 ; *Angell* v.
*Hartford Insurance Co.*, 59 N. Y. 171 ( 17 Am. Rep. 322 );
*King* v. *Cox*, 63 Ark. 204 ( 37 S. W. 877 ); *Myers* v. *Liver-
pool Insurance Co.*, 121 Mass. 338.

The question involved here is whether, in an action
upon the verbal agreement to insure, the policy which
the insurer undertakes and agrees to issue shall be con-
sidered as a factor in any manner regulating or circum-

scribing the relief to be administered; that is to say, whether the terms, conditions and limitations which the contemplated policy would contain, if issued in accord with the understanding of the parties, enter into, limit or control in any particular the preliminary agreement so as to affect the remedy. The authorities all agree that there is a distinction between a contract of insurance which comprehends the issued policy and a contract to insure. The one is executory in its nature, and the other executed. It is plain that, if a suit to compel specific performance is adopted, the policy is regarded as an indispensable element in determining the measure of the relief, because the remedy is eventually applied as if an action had been instituted directly upon the policy. The court treats the contract as executed, and gives relief upon it in that form. The effect of such a proceeding is to enforce the ultimate intendment of the parties, including the policy, stipulations and conditions; for the remedy eventually proceeds as if the policy had been issued, and the suit was for the direct enforcement of its terms and conditions. So that the policy is, at least in an equitable sense, a component part of the preliminary contract. In the action at law damages are demandable for a breach of the preliminary agreement. The usual intendment of such an agreement is that a policy shall issue which shall contain the specific limitations and conditions upon which the loss insured against shall be payable. A failure or refusal to issue the policy constitutes the breach. The undertaking is to insure, and it is not a direct or absolute contract to pay the loss which may accrue to the insured by reason of destruction or injury by fire to the property designated, not exceeding the stipulated amount. Ordinarily, nothing is said in the preliminary arrangement touching what acts of omission or commission, if any, will nullify or avoid the undertaking to pay

the fire loss, or what conditions, if any, shall be observed by him to preserve and perfect his right of action looking to a recovery for such loss.   All these are matters of detail, which the preliminary conditions contemplate shall be prescribed by the policy contracted for.   But the insurance is effected by the policy the issuance of which constitutes the ultimate act contemplated by the executory, and completes the executed, contract.   Now, by what measure shall damages be meted?   Shall it be as if the contract effectuated absolute insurance of the property to the amount of the stipulated sum, payable unconditionally in case of destruction or injury by fire without limitation or condition, or shall it be as the contemplated policy would have prescribed if issued and accepted by the parties?   Mr. Wood, in his work on Insurance (§ 11), says: "The distinction between a contract of insurance and a contract to insure is that the one is executed, and the other executory, and in the one case the action is upon the contract for the loss or damage sustained under the risk, while in the other the action is for a breach of the contract for not insuring, and the measure of the recovery is the loss sustained, so that the effect is the same in either case."   The principle upon which the authorities proceed and the ultimate conclusions at which they have arrived are in harmony with this doctrine.

1. We agree with counsel that where nothing is stipulated in the preliminary agreement as it respects the kind or nature of the policy to be issued, the law presumes the parties contemplated the usual and ordinary policy employed by the company to cover property of like kind and nature as that designated in the agreement. The authorities are numerous and uniform to this effect. We will refer to some of them.   In *Eureka Insurance Co.*

v. *Robinson*, 56 Pa. St. 256 ( 94 Am. Dec. 65 ) the agree-
ment was evidenced by a memorandum entered in the
company's marine docket as follows : " No. 6,570. 1865,
June 23d. Wm. H. Churchill, for account, etc., ( on )
steamboat River Queen, $6,000. Total insurance, inclu-
sive, $12,000, against fire only, while finishing at the
wharf at Pittsburg, Pa., ( rate ) ½ per cent. per mo., from
June 23d, 1865." Subsequently the following entry was
made : " August 1st, 1865. Loss, if any, payable to Rob-
inson, Rea & Co., for benefit of creditors." " Burned
Sept. 10th, 1865." The court, speaking through STRONG,
J., says : " There having been no policy issued, and
nothing more than the memorandum above quoted en-
tered upon the docket of the insurers, the contract is to
be regarded as made upon the terms and subject to the
conditions contained in the ordinary form of policies used
by the company at the time. Whether the contract in
this case was one of marine insurance or of fire insur-
ance, it is not necessary at this stage of our remarks to
determine. The company was authorized to issue poli-
cies of both descriptions, and, alike in the customary
forms of both, it was made the duty of an assured to no-
tify the insurers of any insurance subsequently obtained
elsewhere, on penalty of forfeiting all right to recover
against this company. In fire policies such notice was
required to be given with reasonable diligence, and in-
dorsed upon the policy or otherwise acknowledged in
writing by the company. In marine policies the form
required the notice to be given at the office of the com-
pany, and that the same be approved and indorsed upon
the policy by the secretary or other authorized officer of
the company. As the defendants in fact issued no pol-
icy in either form in this case, literal compliance with
the conditions was impossible. But it was doubtless in-
cumbent upon the plaintiffs to show either that notice of

the subsequent insurance in the Monongahela Insurance Company was given, or that these defendants had in some way dispensed with it.'' It was, however, subsequently determined that the contract was one concerning fire and not marine insurance, and that, although the memorandum was entered in the marine docket, the nature of the risk determined the nature of the policy contemplated by the parties. The case is instructive and much to the point in the present controversy, as the measure of the loss or damages would have been different, owing to salvage conditions under the marine policy, from that provided for under the usual fire policy.

In *Barre* v. *Council Bluffs Insurance Co.*, 76 Iowa, 609, (41 N. W. 373), Beck, C. J., says : '' While the action is not upon the policy of insurance, it cannot be doubted that defendant's liability must be determined by the terms and conditions of the policy, which also must determine the plaintiff's measure of damages in case he recovers. The action is on an agreement to issue a policy. Now, it is plain that plaintiff's damages are just what he would have recovered if the policy had been issued and the suit brought thereon. It is also plain that defendant undertook to issue a policy in the usual form of its policies covering like risks. The law will presume that the minds of the contracting parties met upon a contract containing the terms and conditions of the policy usually issued by defendant covering like risks.'' In *Eames* v. *Home Insurance Co.* (94 U. S. 621), Mr. Justice Bradley says concerning the contract to insure : '' It is sufficient if one party proposes to be insured, and the other party agrees to insure, and the subject, the period, the amount and the rate of insurance are ascertained or understood, and the premium paid if demanded. It will be presumed that they contemplate such form of policy, containing such conditions and limitations as are usual in

such cases, or have been used before between the parties. This is the sense and reason of the thing, and any contrary requirement should be expressly notified to the party to be affected by it.'' So, it is maintained that the relief is the same whether action is brought upon the contract or the policy. In *Firemen's Insurance Co.* v. *Kuessner*, 164 Ill. 275 (45 N. E. 540), the court say : ''A suit to enforce the liability of an insurance company may be brought on the contract for insurance as well as upon the policy. The real cause of action is the same in both the contract and policy. The measure of damages recoverable is the same, and the policy must be based on the contract of insurance, and can contain no element different therefrom.''

It has also been held, as before stated, that the relief is the same whether it is sought in equity to enforce specific performance and a decree for damages in pursuance thereof, or at law directly upon the contract for recovery of damages for a breach thereof in neglecting or refusing to issue the policy : *Nebraska Insurance Co.* v. *Seivers*, 27 Neb. 540 (43 N. W. 351); *Gold* v. *Sun Insurance Co.*, 73 Cal. 217 (14 Pac. 786). Turn the proposition, therefore, whichever way we may, the policy itself, which is in the mind of the parties when the preliminary agreement is entered into,— the one in form which it is usual for the company to issue covering like property, unless otherwise stipulated,— becomes a controlling factor in determining the relief to which the assured is entitled. In further support of these various propositions, see *Van Loan* v. *Farmers' Insurance Association*, 90 N. Y. 280 ; *Home Insurance Co.* v. *Favorite*, 46 Ill. 263 ; *Hubbard* v. *Hartford Insurance Co.*, 33 Iowa, 325 (19 Am. Rep. 305); *Smith* v. *State Insurance Co.*, 64 Iowa, 716 (21 N. W. 145); *State Insurance Co.* v. *Porter*, 3 Grant, Cas. 123 ; *Newark Machine Co.* v. *Kenton Insurance Co.*,

50 Ohio St. 549 (22 L. R. A. 768, 35 N. E. 1060); *Salis-bury* v. *Hekla Insurance Co.*, 32 Minn. 458 (21 N. W. 552); *De Grove* v. *Metropolitan Insurance Co.*, 61 N. Y. 594 (19 Am. Rep. 305); *Lipman* v. *Niagara Insurance Co.*, 121 N. Y. 454 (8 L. R. A. 719, 24 N. E. 699); *Fuller* v. *Madison Insurance Co.*, 36 Wis. 603. It is clearly manifest from these authorities, against which we find no counter-vailing opinions, that the court below was in error both upon the instruction given and the one requested, but refused, and for this reason a new trial must be had.

2. There was another question, however, presented to the court below by a requested instruction, and rightly ruled, the consideration of which may serve to define more clearly the nature of the relief obtainable by an action upon the contract or agreement to insure. The plaintiff replied to the defense that the property was incumbered with a chattel mortgage, at the time the con-tract was entered into, which would have voided the policy if issued, by stating that defendant's agent made no inquiry touching any incumbrance, and did not inform plaintiff that the existence of such a condition would in any manner affect the insurance, and, therefore, that the company waived the condition against incumbrances which would have been contained in the contemplated policy. The court was asked, but refused, to instruct that if the existence of such chattel mortgage was un-known to the defendant or its agents, and no agree-ment made or entered into consenting to said mortgage, then that said policy would, if issued, be void. Where, in the course of the formulation of the preliminary agree-ment, no inquiry is made touching incumbrances, and no intimation is given that they would in any way affect the insurance stipulated for, and the contract is denied, and the policy withheld, we think it operates as a waiver

of the condition in the policy voiding it because of such incumbrances. We held in *Koshland* v. *Home Insurance Co.*, 31 Or. 321 (49 Pac. 864), that, where the policy is issued with the knowledge on the part of the agent that the property was incumbered by mortgage, the condition was waived so that it could not afterwards be insisted upon by the company. In *Nichols* v. *Fayette Insurance Co.*, 1 Allen, 63, where the assured disclosed the fact that an incumbrance existed, but failed to state the amount, it was held that the issuance of the policy, with the limited knowledge thus acquired, was a waiver of the condition against incumbrances. In the case of *Geib* v. *Enterprise Co.*, found reported as a note to *Geib* v. *International Insurance Co.*, 1 Dill. 449, (Fed. Cas. No. 5,298), the defendant's agent had procured from the plaintiff, a German unable to read, an application for insurance, which was not read to him, but was represented to be all right, no inquiries whatever having been made of him respecting incumbrances, and it was held that the acts of such agent constituted a waiver on the part of the company of the plaintiff's duty to disclose the existence of an incumbrance upon the property covered. To the same purpose see *Klein* v. *Union Insurance Co.*, 3 Ont. 234, 261. We also held in *Koshland* v. *Hartford Insurance Co.*, 31 Or. 402 (49 Pac. 866), that a failure on the part of the assured to disclose an incumbrance, when no inquiry is made on the part of the company's agent concerning such matters, was not violative of the provisions of the policy that it should be void if the insured concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning the insurance or the subject thereof, or if the interest of the insured in the property be not truly stated.

Now, where the policy contains stipulations voiding it on account of certain conditions existing at the time of

its issuance, such as incumbrances upon the property, other insurance, and the like, the assured cannot be presumed to have become apprised of them unless some intimation thereof has been conveyed to him by inquiry touching the subject matter of such conditions, or other distinct notice that they would be insisted upon, or unless the policy has been issued to him that he may be advised of its exact terms in the premises.  For this reason, where the existence of a contract to insure is flatly denied, and the issuance of the policy is refused and withheld, the company should be held to have waived such conditions as are calculated to void it at the very moment of its execution, unless it has given ample notice to the assured that they will not only be contained in the policy, but insisted upon, in case the facts which are supposed to give rise to the stipulations prove to be falsely represented.

3.  So it is as it respects those conditions which the assured is required to observe in order to perfect his remedy against the company.  A withholding of the policy, and a denial of the right to its issuance, will waive the conditions touching proof of loss :   *Tayloe* v. *Merchant's Insurance Co.*, 50 U. S. (9 How.), 390 ; *Gold* v. *Sun Insurance Co.*, 73 Cal. 217 (14 Pac. 786); *Baile* v. *St. Joseph Insurance Co.*, 73 Mo. 371 ; and *Campbell* v. *American Insurance Co.*, 73 Wis. 100 (40 N. W. 661).   And in *Hardwick* v. *State Insurance Co.*, 20 Or. 547–557 (26 Pac. 840), it was held that such an act precluded the company from insisting upon the stipulated limitation of the action to enforce payment.  But the assured, under the authorities, is held accountable under all conditions of the contemplated policy which are calculated to protect the company against subsequent increase of hazard without its consent, in the prescribed manner, if it is possible, without the physical existence of the instrument itself, to comply

therewith : Eureka Insurance Co. v. Robinson, 56 Pa. St. 256 (94 Am. Dec. 65). Reversed and remanded.

Reversed.

Decided at Pendleton, 13 August, 1898.