## E. Ferdie Trichelle, Defendant in Error, v. Sherman & Ellis, Inc., Plaintiff in Error.

### Gen. No. 34,346.

Heard in the second division of this court for the first district at the June term, 1930. Opinion filed December 16, 1930.

KNAPP, BEYE, ALLEN, COCHRAN & CUSHING, for plaintiff in error; JOHN R. COCHRAN, LEONARD F. MARTIN and R. CORWINE STEVENSON, of counsel.

FISHER, BOYDEN, BELL, BOYD & MARSHALL, for defendant in error; RUDOLPH M. MULFINGER, of counsel.

MR. JUSTICE BARNES delivered the opinion of the court.

This was a suit to recover insurance predicated upon a so-called preliminary or temporary contract therefor generally referred to as an insurance binder. Defendant filed the general issue and several special pleas. Plea number two denied liability on the ground that the binder was unauthorized, number three, on the

ground that it was not executed by defendant or anyone authorized by defendant, and the other special pleas set up noncompliance with some term or provision contained in the policy referred to in the binder.

The judgment under review was entered on the verdict of the jury against the defendant for $11,958.33, including interest.

The so-called binder (omitting the printing at the top of the letter) and dated at Houston, Texas, April 8, 1924, reads:

"Miss E. Ferdie Trichelle,
820 Live Oak,
City.
Dear Madam:

We are this day binding coverage on your three story, iron clad metal roof warehouse to the amount of ten thousand ($10,000.00) dollars concurrent insurance.

The policy will be here from our Chicago office within the next few days and at that time I will deliver same.

Very truly yours,
Indemnity Exchange
Sherman & Ellis, Inc.
(Signed) By John A. Montgomery."

Said "Indemnity Exchange" was a reciprocal fire insurance exchange having its home office in Chicago, and licensed to transact business in Texas. Under the method of reciprocal insurance, so-called subscribers thereto insure each other by private contracts through a common attorney in fact authorized by each to exchange contracts of insurance on his behalf with the other subscribers and under such authority the attorney executes a policy of insurance to the subscriber. The place where the business is conducted and policies exchanged by said attorney is called the "Exchange."

Sherman & Ellis, Inc., defendant, was the attorney in fact for the subscribers to the Indemnity Exchange,

and employed one Gray at the Chicago office as its managing fire underwriter, and one Montgomery at Houston, Texas, as its solicitor and claim adjuster. Gray only was authorized to issue binders. Montgomery had spoken to plaintiff while she was assistant manager to the Kent H. Easter Warehouse and Forwarding Company at Houston, regarding fire insurance on its building in the Indemnity Exchange. She told him she was not the owner but might have to take over the building on a mortgage, and if so, would give him some insurance, and that the building was then carrying $15,000 insurance. He told her he had no authority to pass on the risk and that Sherman & Ellis, Inc., was sending a Mr. Botkin into the territory and he would inspect the building.

A few weeks later Montgomery and Botkin called on plaintiff and inspected the building. It had a Grinnell sprinkler system but not connected with the city water service. Botkin got the impression it would be, and said he would approve the risk, but plaintiff made no statement to that effect. His approval, however, was subject to Gray's. No arrangement for insurance, however, was made at that time.

Later, shortly before April 2, 1924, after plaintiff acquired title to the property, she called on Montgomery and told him she was ready for $10,000 insurance, for him to get the description of the property and the amount of concurrent insurance from the policy form of another concern carrying insurance on the same, and that she expected the sprinkler system to be connected about April 4th. It was never connected up.

On the same day Montgomery wrote to the Indemnity Exchange at Chicago asking it to place $10,000 fire insurance on the "Kent H. Easter Warehouse and Forwarding Company Warehouse," to become "effective April 4 by wire," and stating therein the character of its construction, that Botkin had passed upon it as

a good risk, that the Grinnell sprinkler system was installed, and what would be the probable rate. The admitted purpose of the letter was to get the issue of a binder. Gray received it April 5. Without receiving a reply Montgomery on April 7, having that day obtained a description of the property and the amount of concurrent insurance (then $15,000) in the manner plaintiff indicated, addressed a letter to the Easter Warehouse Company advising it that the Exchange was that day binding coverage on the warehouse to the amount of $10,000 concurrent insurance, and that the policy would be received from Chicago in a few days, and on the same day sent the Exchange a telegram advising that he was issuing the binder for the Easter Company, and also a letter advising it that the binder was for $10,000, that there was $15,000 concurrent insurance, and requesting a policy for $10,000. The letter was received at 2 o'clock, April 10, the day of the fire.

On April 8, plaintiff having returned to Montgomery the binder or letter of April 7, addressed to the Easter Company instead of to her, he delivered to her the binder in question, and wrote to the Exchange advising of the change of ownership and that the policy was to be issued to plaintiff. That letter was received at 11 a. m. April 10, 1924. Defendant did not reply to Montgomery's telegram of April 7 advising it that he had issued a binder for the property nor repudiate his exercise of such authority.

Defendant contends that such preliminary contract is subject to all the terms and conditions of the usual form of policy to be subsequently issued even though such policy may never issue, and cites the following authorities as sustaining that theory: *Eames v. Home Ins. Co. of New York,* 94 U. S. 621, 629; *Eureka Ins. Co. v. Robinson, Rea & Co.,* 56 Pa. St. 256, 94 Am. Dec. 65; *Barre v. Council Bluffs Ins. Co.,* 76 Iowa 609,

41 N. W. 373; *Cottingham v. National Mut. Church Ins. Co.*, 290 Ill. 26; *Lipman v. Niagara Ins. Co.*, 121 N. Y. 454, 458, 24 N. E. 699, 700; *Sherri v. National Surety Co.*, 243 N. Y. 266; *Concordia Fire Ins. Co. v. Heffron*, 84 Ill. App. 610, 612.

Plaintiff does not seem to question this general doctrine except where the policy is not issued, a fact which we fail to see could affect the doctrine, and as appears from several of the cited cases, it has been applied where the policy was never issued. Plaintiff's main contention is that having repudiated the binder and denied liability under it defendant is in no position to urge noncompliance with the terms and conditions of the unissued policy, and the following cases are referred to: *Welch v. Northern Assur. Co.*, 223 Ill. App. 77; *Chenier v. Insurance Co. of North America*, 72 Wash. 27, 129 Pac. 905; *Western Assurance Co. v. McAlpin*, 23 Ind. App. 220, 55 N. E. 119; *Tayloe v. Merchants' Fire Ins. Co.*, 50 U. S. (9 How.) 390; *Knickerbocker Life Insurance Co. v. Pendleton*, 112 U. S. 696, 709; *Gold v. Sun Ins. Co.*, 73 Cal. 216, 14 Pac. 786; *Baile v. St. Joseph Fire & Marine Ins. Co.*, 73 Mo. 371; *Hardwick v. State Ins. Co.*, 20 Ore. 547, 557, 26 Pac. 840, and *Sproul v. Western Assurance Co.*, 33 Ore. 98, 99, 54 Pac. 180.

If upon the instant state of facts, however, plaintiff's contention is untenable both as to construction of the contract and waiver of the provisions of the contemplated policy, and defendant's theory of the legal import and effect of the binder is correct and applicable to the facts, it follows that the insured cannot recover if she has failed to comply with such provisions.

This leads us to consider, first, the legal import of the so-called binder, assuming authority to issue it, which we think defendant is in no position to question, it having failed to repudiate at once Montgomery's

exercise of such authority conveyed to it both by wire and by letter.

It will first be noted that the binder does not purport to express any terms of the "coverage" and expressly refers to a policy to be delivered. That it is a preliminary contract for present insurance as of its date, and an executed contract in that respect, is not questioned, and the suit is brought upon it as such, but it is distinguishable from a suit brought upon or to enforce a contract "to insure." Most of the cases cited by plaintiff are of the latter nature. Some note that distinction, particularly the *Welch* case, and in some the terms of the preliminary contract were either deemed complete or affected by something said or omitted to be said. There is no contention here that anything was said or done that created any different understanding than is expressed in the preliminary contract, so it becomes a mere question of law, in such a case, whether there may be read into such contract the terms and conditions of the contemplated policy to which said contract refers.

One of the leading cases on the subject, frequently referred to, is the case of *Lipman v. Niagara Fire Ins. Co.*, 121 N. Y. 454. There the insurance company issued a "binding slip" or agreement which recited that "this receipt binding until policy is delivered" and, as there said, did not contain any of the conditions "usually found in insurance policies." The insurance company relied upon a provision contained in its ordinary policies authorizing it to terminate the insurance on notice, and upon its having given such a notice prior to the fire. The insured contended that the company could not cancel the risk so long as the binding slip was in force, and that the only remedy of the company to get rid of the risk was to issue the policy and then immediately cancel it. This is much the same contention made here that defendant's theory that the binder

is subject to the terms and conditions of the contemplated policy is untenable where the policy is never issued. The court said:

"The binding-slip was a short method of issuing a temporary policy for the convenience of all parties, to continue until the execution of the formal one. It would be unreasonable to suppose either that the brokers expected an insurance except upon the usual terms imposed by the company, or that the secretary of the company intended to insure upon any other terms. . . . The binding-slip was a mere memorandum to identify the parties to the contract, the subject matter, and the principal terms. It refers to the policy to be issued. The construction is, we think, the same as though it had expressed that the present insurance was under the terms of the usual policy of the company, to be thereafter delivered."

This construction was reaffirmed in *Sherri v. Nat. Surety Co.*, 243 N. Y. 266, 153 N. E. 70, and is adopted in the other cases cited by defendant and above referred to. In *Cottingham v. National Mut. Church Ins. Co.*, 290 Ill. 26, 33, a suit that was brought on a preliminary contract of insurance, our Supreme Court, referring to the *Eames* case (U. S. Sup. Ct.) and using much the same language, said: "It is not necessary in such a preliminary contract that all the details of the contract as finally expressed in the written policy should be specified. In a preliminary contract it will be presumed that the parties contemplate such form of policy containing such conditions and limitations as are usual in such cases or have been used before between the parties."

In short, this theory recognizes a practical situation and the manifest mutual intent and understanding of the parties with regard thereto, that the applicant desiring protection from the date of his application, before the policy can be executed in the ordinary course

of business, is given and accepts a binder as evidence of "coverage" or temporary insurance from that date until a policy to take effect as of said date can be delivered, but, in the absence of any express terms in the binder or other understandings, on the basis of the terms and conditions of the policy contemplated. By the very nature of the transaction both parties contemplate that the protection given is in accordance with the terms and conditions of the policy to be issued.

Plaintiff, however, contends that the insurance company waived such terms and conditions when it repudiated the contract and refused to issue the policy. As already stated, most of the cases cited by plaintiff were suits brought upon a verbal or written preliminary contract "to insure" and not upon a contract for present insurance, and most of what was said in those cases should be considered with reference to that distinction. In several of them the insurance company claimed that the failure to produce proofs of loss required by the contemplated policy relieved it of liability, and it was held that the refusal of the company to issue a policy was a waiver of such proofs. The ruling was on the theory, however, that the refusal to issue the policy superseded the necessity for producing the proofs and it would be a useless and idle ceremony. That doctrine is not questioned. Some of plaintiff's cases so deciding nevertheless assume or expressly recognize the doctrine contended for by defendant. In the *Sproul* case, *supra,* it was said that where nothing is stipulated in the preliminary agreement with respect to the kind and nature of the policy to be issued, the law presumes the parties contemplate the usual ordinary policy employed by the company to cover property of like kind and nature as that designated in the agreement, but held that where no inquiry was made touching incumbrances that would have voided the policy, and no intimation given that they would in any way affect the insurance stipulated for, and the insurance

company denies the contract and withholds the policy, it operates as a waiver of the condition of the policy voiding it because of such incumbrances. "But," the court added, "the assured, under the authorities, is held accountable under all conditions of the contemplated policy which are calculated to protect the company against subsequent increase of hazard without its consent, in the prescribed manner, if it is possible, without the physical existence of the instrument itself, to comply therewith," citing the *Eureka Ins.* case, *supra.* If, however, in the absence of any understanding otherwise than expressed in a binder that merely identifies the assured, the property and its amount and refers to a policy to be issued, waiver may be asserted to exclude the operation of any one condition of liability contained in the contemplated policy because not referred to in the preliminary contract or discussed at the time of its execution, it is somewhat difficult to draw the line as to what conditions and limitations of the policy may be enforced. We cannot reconcile such a ground of waiver with the general rule of construction—which the opinion itself concedes—that where a binder does not attempt to prescribe or restrict the terms of insurance but merely undertakes to give coverage and refers to the policy to be delivered thereafter the obligations of the parties are, as stated in the *Lipman* and *Sherri* cases, *supra,* "according to the terms of the policy in ordinary use by the company."

But it is urged by defendant that plaintiff can in no event avail herself of the doctrine of waiver having pleaded performance on her part of the conditions of the policy and not having pleaded waiver, citing *Feder v. Midland Casualty Co.,* 316 Ill. 552, where it was held that a waiver of the requirement of proofs of loss could not be claimed where plaintiff had not by the pleadings claimed the benefit of such waiver, but instead had in her declaration alleged performance of

the conditions. To meet this contention her counsel argues that the allegation in the declaration of performance on her part of the conditions of the policy is mere surplusage in view of plaintiff's theory that the preliminary contract measures the obligation upon which her right to recover depends. While this is but a mere repetition of the argument that the preliminary contract is not subject to the terms and conditions of the policy to be issued, nevertheless, her declaration was based upon a different theory. Each count not only alleges that plaintiff has ''kept and performed all things in said policy contained on her part to be kept and performed''—clearly referring to the policy contemplated to be issued—but explicitly sets forth in detail compliance with certain conditions of the contemplated policy, namely, that she had an interest in the property in the amount for which it was insured, that the loss did not happen by any means ''not covered by said policy of insurance,'' that she gave notice to defendant of the loss as soon as possible, that there was not any other insurance on said property except the amount of $15,000 (afterwards amended to read $20,000), that the building was not appropriated, applied or used for or to the purpose of carrying on or exercising therein any trade, business or vocation denominated hazardous or extrahazardous, or specified as not being covered by said policy of insurance.

Construing the pleading most strongly against the pleader, as we must, under a familiar rule, plaintiff must be held to have recognized that the contract sued upon embraced the terms and conditions of the policy to be issued, and having alleged performance of all things in said policy on her part to be kept and performed, and not having pleaded waiver, either in the declaration or by replication to the special pleas, she is in no position under the well established rule stated in the *Feder* case, to rely upon her claim of waiver.

If, therefore, the binder be construed as subject to the terms and conditions of defendant's usual form of policy, and there is no ground for waiver, then it remains to be seen whether the policy was voided by plaintiff's failure to comply with its terms and conditions or any of them.

One of the provisions of defendant's form of policy, set up in its eighth plea, is that any suit or action thereon for the recovery of any claim shall not be sustainable unless commenced within twelve months next after the fire. It is undisputed that the warehouse was destroyed by fire on April 10, 1924, and that this suit was commenced by plaintiff on April 21, 1926. The suit was, therefore, barred by this limitation of the contract. (*Hartzell v. Maryland Casualty Co.*, 163 Ill. App. 221, and cases there cited.)

The seventh plea set up a provision of the policy that it shall be void if the insured has made or thereafter makes or procures any other contract of insurance on the property covered by the policy. When plaintiff asked for temporary insurance there was, as she represented, concurrent insurance on the property for only $15,000. The day she asked for a new binder in her name she had increased the amount to $20,000, without Montgomery's knowledge or conveying the fact to him, on which she collected $18,000. The fact is not disputed and it cannot be questioned that violation of this provision invalidated the policy. (*Continental Ins. Co. v. Hulman & Cox*, 92 Ill. 145.)

Defendant's fifth plea set up a provision of the policy that it shall be void "if there was kept, used or allowed on the premises any explosives." That there was ammonia kept in the warehouse until the fire and that it caused explosions is practically admitted and not questioned. That the language of the policy includes ammonia as an explosive there is little or no room for doubt. (*Penman v. St. Paul Fire & Marine*

*Ins. Co.*, 216 U. S. 311.) A violation of this provision also precludes plaintiff's right to recover.

In view of these conclusions it is unnecessary to discuss the grounds relied upon in other special pleas as to which the evidence may be more or less uncertain. The facts on which the special pleas above considered rest being uncontroverted it follows upon the construction we give to the contract sued on and the denial of plaintiff's right to assert waiver of any of the conditions of the contemplated policy, the court erred in not directing a verdict for defendant as requested and that, therefore, the judgment must be reversed as a matter of law.

*Reversed.*

SCANLAN, P. J., and GRIDLEY, J., concur.