Argued December 5, 1941; affirmed January 6, 1942

# BIRD *v.* CENTRAL MANUFACTURERS MUTUAL INSURANCE CO.

## INSURANCE CO.

(120 P. (2d) 753)

[ 1 ]

Before BAILEY, LUSK, RAND, ROSSMAN and BRAND, Associate Justices.

*Walter C. Winslow*, of Salem, for appellant.

*R. W. Skopil* and *Lawrence N. Brown*, both of Salem, for respondent.

RAND, J. This is an action upon a policy issued by the defendant to plaintiff, insuring an automobile against loss by collision or upset. The insured automobile belonged to the Salem Automobile Company for whom the plaintiff, who obtained the insurance, was sales manager. The car had been loaned to the plaintiff, who was about to take a trip to the East, on condition that he would have it fully insured and be personally liable for any injury or damage which it might sustain while in his possession.

In compliance with this agreement, the plaintiff called over the telephone one G. A. Coffey, an agent

of the defendant company, whose place of business was in Salem, and informed him that he was about to take a vacation trip to the East and that he wanted to insure "a certain automobile we had at the place", and gave Coffey the motor and serial numbers of the car and asked him to look it over.

Coffey was a witness for plaintiff and testified that he was the agent of the defendant company and had authority to issue insurance policies on its behalf. He admitted that he had the telephone conversation related by the plaintiff and that he went to the garage of the Salem Automobile Company where this particular car was pointed out to him; that he examined it, took the serial and motor numbers, looked at the speedometer and saw that it indicated less than 100 miles of travel, and, without making any inquiry as to its ownership and without having any statement or representation made to him in respect thereto, he says that he assumed that the plaintiff was the owner of the automobile and issued the policy and inserted therein the plaintiff's name as the person insured. However, no delivery of the policy was made until after plaintiff's return from the East. On the morning next following the telephone conversation and Coffey's inspection of the car but before starting on his trip, plaintiff went to Coffey's office and made a part payment of the premium and obtained a receipt therefor and at said time was assured by Coffey that the car was then fully insured for the term of one year from and after June 14, 1939, but plaintiff was not informed as to any of the terms or conditions which were to be inserted in the policy and was not informed of any of such terms or conditions until after he had returned to Salem and the damages had been sustained as hereinafter stated.

While plaintiff was returning from the East and shortly before reaching Salem, one of the rear tires blew out and the car was overturned and partially demolished. Notice thereof was duly given to defendant's said agent who, at said time, delivered the policy to the plaintiff. The defendant then sent an adjuster to inspect the car and make an adjustment, but the defendant has ever since refused to pay for the damage or any part thereof, and based its refusal upon the ground that the plaintiff was not the owner of the car at the time it was insured. Thereupon, the plaintiff settled with the Salem Automobile Company and paid the amount of the damage sustained by the automobile, and brought this action to enforce payment under the policy.

The policy was written on one of defendant's printed forms and contains the following stipulations:

"The automobile described is fully paid for by the insured, and there is no lien, mortgage or other encumbrance, except as follows: No Exceptions."

"This policy does not apply: * * * (c) if the interest of the insured in the automobile is or becomes other than as stated in this policy without the written consent of the company; * * *

"No notice to any agent, or knowledge possessed by any agent or by any other person shall be held to effect a waiver or change in any part of this policy nor estop the company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed by the executive officer or representative of the company. * * *

"By acceptance of this policy the insured agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations, and that this policy embodies all agreements existing be-

tween himself and the company or any of its agents relating to the insurance.''

The whole evidence shows, and it is undisputed, that no written application for the policy was made and no declaration or statement as to the ownership of the car was ever made by plaintiff or by any one acting on his behalf. It is also admitted that the statement of ownership contained in the policy was inserted therein by the inadvertence and mistake of defendant's agent and that the error was not caused by anything said or done by plaintiff or by any other person acting on his behalf.

■ Defendant's first contention is that plaintiff had no insurable interest in the automobile at the time the policy was issued. The transaction between the plaintiff and the Salem Automobile Company constituted a bailment and created in plaintiff, as bailee, a special ownership in the automobile although the Salem Automobile Company was the general owner thereof under plaintiff's contract with said company. He had agreed to be liable for any damage sustained by the automobile while it was in his possession, as bailee. It is well settled that any one has an insurable interest in property who derives a benefit from its existence or would suffer loss from its destruction. It is sufficient to constitute an insurable interest in property that the insured is so situated with reference to the property that he would be liable to loss should it be injured or destroyed by the peril against which it is insured. 23 Am. Jur., section 322, and authorities there cited. As such bailee of the property and under the terms of the bailment, the plaintiff, although not the general owner thereof, had an insurable interest in the automobile at the time the policy was issued.

██ Defendant's next contention is that, by bringing action upon the policy without first having obtained its reformation, the plaintiff accepted the policy as written and all the terms and conditions contained in it, and that, under these terms and conditions, because of the misrepresentation as to ownership, erroneously inserted therein by mistake of defendant's agent, the policy is avoided and, hence, this action cannot be maintained. It was wholly unnecessary for the plaintiff, before bringing this action upon the policy, to seek its reformation. Reformation of an insurance policy, like that of all other written contracts, may, of course, be had for fraud, inequitable conduct or mutual mistake and, in some instances, as pointed out in *De Tweede v. Barnett Estate*, 160 Or. 406, 85 P. (2d) 361, when the mistake was not mutual if the policy or contract, as written, does not express the actual or real agreement of the parties. But where, as here, the policy was not delivered until after the damage had been sustained and new terms not agreed upon have been inserted into the policy by the agent of the insurer, the plaintiff has a plain, speedy and adequate remedy at law to enforce, under the policy, the oral contract entered into by him with such agent. See *Boardman v. Insurance Co. of Pa.*, 84 Or. 60, 164 P. 558, where a suit for reformation was denied.

██ The evidence clearly shows that in the instant case the minds of the parties, that is to say the plaintiff and defendant's agent Coffey, met on all the essential terms and elements of the oral contract. Those essential elements were (1) the subject-matter to be insured; (2) the risk insured against; (3) the commencement and period of the risk undertaken by the insurer; (4) the amount of the insurance; and (5) the

amount of the premium and time in which it was to be paid; and this contract was supported by a sufficient consideration and was one which Coffey had a right to make. The contract, however, as written made the ownership of the automobile material to the risk. Upon this element of the contract, as later written therein by Coffey, plaintiff had no notice or knowledge that it would be inserted in the policy, and, as to this, the minds of the parties did not meet and, hence, there was no mutual mistake in respect thereto, requiring reformation before action could be brought thereon. As stated in 29 Am. Jur., section 127:

"Executory contracts to insure in the future are valid and are enforceable, although oral, if all the other essentials of a valid contract are present. A promise, for a valuable consideration, to make a policy, is no more required to be in writing than a promise to execute a bond, bill or note."

Again, in section 129, the authors say:

"The rule now sustained by practically all of the cases is that in the absence of a statutory or charter provision to the contrary, an oral or parol contract of insurance which is otherwise binding and contains all of the elements essential to a contract is valid."

In *Arthur v. Palatine Ins. Co.*, 35 Or. 27, 57 P. 62, 76 Am. St. Rep. 450, this court, in an opinion written by Mr. Justice ROBERT S. BEAN, said:

"* * * As we have already said, the policy was issued upon an oral application, without any inquiry on the part of the defendant as to liens or other incumbrances upon the property, and without any statement or representation in reference thereto by the assured, and the evidence does not disclose that either the insured or the plaintiffs were informed or knew that, if a mortgage existed, defendant would not take the risk, or that it would insert in the policy which it agreed to issue a clause making it void if the prop-

erty was so incumbered. Under such circumstances, we take the law to be that the company is deemed by its action to have consented to assume the risk of such liens and incumbrances as may have been upon the property, and to that extent to have modified or suspended the printed terms of the policy, which was prepared for general use, without reference to the particular case. This is the only doctrine consistent with honesty and fair dealing, and is the logical result of Sproul v. Western Assurance Co., 33 Or. 98, 54 P. 180, and is directly supported by Wright v. London Fire Assoc., 12 Mont. 474, 19 L.R.A. 211, 31 P. 87; (and other authorities cited).''

In *Michigan Pipe Co. v. Michigan Fire & Marine Ins. Co.*, 92 Mich. 482, 52 N. W. 1070, 20 L. R. A. 277, it is said:

''It is well settled that, where a contract of insurance has been agreed upon, no policy need be made out, or, if made out, its delivery is not essential to the validity of the contract. If in such case loss occurs, the insured may bring suit upon the agreement, or file a bill for the specific performance of the contract. Insurance Co. v. Colt, 20 Wall. 560; Tayloe v. Insurance Co., 9 How. 390; Lightbody v. Insurance Co., 23 Wend. 18, 25; City of Davenport v. Insurance Co., 17 Iowa, 276, 285.

In *Allesina v. London Ins. Co.*, 45 Or. 441, 78 P. 392, 2 Ann. Cas. 284, this court again considered its ruling in *Arthur v. Palatine Ins. Co.*, supra, and affirmed its former ruling in that case, saying, among other things:

''* * * A policy of insurance is prepared in the office of the company and becomes binding on the assured because it is delivered to and accepted by him. In accepting it he has a right to assume that the company does not intend to insist upon the printed clause therein relating to incumbrances on the property if it makes no inquiry of him concerning the

matter, and he has made no statements in reference thereto, and has not been advised that the question was at all material. The preparation and issuance of the policy is the act of the company, and if, in pursuance of a previous agreement to insure, it issues and delivers a policy purporting to cover loss or damage by fire, and accepts and receives the money of the insured, without making any inquiry of him as to incumbrances, or without advising him of the effect on his contract of an incumbrance, it is receiving and accepting his money under circumstances but little short of false pretenses, if the contract is void from the beginning, and never in fact had any force or validity, because of a provision inserted therein by it without the knowledge of the assured, rendering it void if the property is incumbered. In such a case the company would not only wrongfully receive and accept the money of the insured, but would mislead him into the belief that his property was insured, when in fact it was not, thus deceiving a party honestly seeking and paying for insurance. The consistent and logical result of such a position is that an insurance company may orally negotiate with a property owner to insure his property, and, after investigating the condition of the property so far as it may see fit, agree to issue a policy thereon, without any written application or statement of the assured, relying on its own knowledge of the situation, receive and accept the premium, frame and deliver to the insured a policy which is invalid from its inception, and which in no manner effectuates the purpose which the parties had in view, or which the company promised and agreed to accomplish, and for which it received and accepted the money of the assured. Such a conclusion would be to impute to an insurance company a fraudulent intent to wrong and deceive the insured by issuing and delivering a policy not binding as a contract of insurance, although it received and accepted the premium therefor, knowing that the insured believed the contract valid. We are unwilling to adopt a view which leads to such results and which the facts do not warrant.''

To the same effect, see *Sproul v. Western Assurance Co.*, supra, and *Rogers v. Maloney*, 85 Or. 61, 165 P. 357, where the court said:

"* * * The principle announced in the Allesina and Arthur cases is still regarded as sound wherever applicable."

Also, *Sykes v. Sperow*, 91 Or. 568, 179 P. 488, and *Williams v. Pacific States Fire Ins. Co.*, 120 Or. 1, 251 P. 258.

It must be remembered that this policy is not a standard fire insurance policy and, hence, what was said in *Oatman v. Bankers' Fire Relief Assn.*, 66 Or. 388, 133 P. 1183, 134 P. 1033, has no application here.

There are other assignments of error urged by the defendant as to the admission of testimony and to the giving of several instructions. These have been carefully considered and we find no error.

For the reasons stated, the judgment of the circuit court is affirmed.

 This being an insurance case, the respondent, the plaintiff herein, is, by force of the statute, entitled to be allowed a reasonable attorney's fee for the services performed upon this appeal, and the sum of $150 is adjudged to be a reasonable attorney's fee for said services. It is, therefore, hereby ordered that, in addition to the amount of the judgment entered in the circuit court, the plaintiff be allowed the further sum of $150 as an attorney's fee in this court. The cause will, therefore, be remanded to the circuit court with directions to enter a judgment against the defendant for $150 in addition to the amount of the judgment appealed from, and it is so ordered.