· THE COURT OF HONOR

*v.*

CAROLINA T. DINGER.

*Opinion filed April 17, 1906.*

1. BENEFIT SOCIETIES—*whether the deceased was in good health when re-instated is a question of fact.* Whether the deceased was "in good health" when re-instated in a benefit society, within the meaning of the constitution of the society, is a question of fact upon which the judgment of the Appellate Court is conclusive, where there is evidence in the record tending to show that while the deceased was not entirely free from disease at that time he was in reasonably good health and did not die from the effects of any disease he then had.

2. SAME—*when refusal to admit proof of declarations of insured as to his health is not reversible error.* Refusal to admit proof of declarations to a witness by the insured as to the condition of his health during the last few months of his life is not reversible error in an action on a benefit certificate, even though the evidence is competent, where the defendant was allowed great latitude in the matter and proved by several other witnesses the condition of the health of the insured covering a period of two years prior to his death.

3. SAME—*when special findings are not inconsistent with general verdict.* Special findings that the deceased was "in reasonably good health" but that he was suffering from chronic laryngitis at the time he was re-instated to membership in a benefit society are not inconsistent with a general verdict for the plaintiff in an action on the certificate, even though the constitution of the society required the insured to be "in good health" when re-instated.

4. SAME—*when recorder of local lodge is the agent of supreme lodge.* Where all that a delinquent member of a benefit society has to do to be re-instated, if in good health, is to pay his dues to the recorder of the local lodge, the latter must be regarded as the agent of the supreme lodge in the matter of accepting the dues and re-instating the member in good standing, notwithstanding the provisions of its constitution and by-laws to the contrary.

5. SAME—*when instruction as to waiver is not misleading.* An instruction to the effect that if the jury believe, from the evidence, that the deceased was a member "in good standing" upon the books of the local lodge at the time of his death and that he had paid all general dues and assessments then owing by him, such facts are

evidence from which the jury may infer that the defendant waived the right to forfeit the insurance contract, is not objectionable, as tending to mislead the jury into believing such facts would amount to a waiver, irrespective of how the insured procured his re-instatement or what was his condition of health at that time.

6. SAME—*when instruction correctly defines "good health."* An instruction in an action on a benefit certificate that "the words 'good health,' when applied to a human being, mean that the person said to be in good health is in a reasonably good state of health and that he is free from any disease or illness that tends seriously or permanently to weaken or impair the constitution," states a correct definition of the term "good health," and if given at the request of the defendant is binding upon it.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Lee county; the Hon. R. S. FARRAND, Judge, presiding.

HENRY S. DIXON, (WILLIAM B. RISSE, of counsel,) for appellant.

WILLIAM H. WINN, for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

Appellee, Carolina T. Dinger, began an action of assumpsit in the circuit court of Lee county against appellant to recover upon a certificate of insurance issued to her husband, Carl A. Dinger. The declaration consisted of one count upon the certificate and the common counts in assumpsit. A plea of the general issue was filed, with a stipulation that the defendant might offer under it any defense or produce any evidence which could be introduced under any special plea, etc. The cause was tried by a jury, and at the close of the evidence the defendant asked the court to instruct the jury to find for it, which was denied. It also asked that the jury be required to return answers to special interrogatories as to the condition of the health of Carl A. Dinger on the 22d day of December, 1902, which being answered, a motion was entered to find a verdict upon such

221—12

special findings, but the jury returned a general verdict finding the defendant guilty and assessing the plaintiff's damages at $2187.46, upon which, after overruling motions in arrest of judgment and for a new trial, judgment was entered. The defendant prosecuted an appeal to the Appellate Court, where the judgment of the circuit court was affirmed, and it now brings the case to this court by further appeal.

The evidence shows that Carl A. Dinger became a member of the appellant society on May 26, 1898, and had a benefit certificate issued to him, payable to his wife, the appellee. The eleventh assessment upon his certificate for the year 1902 was due on or before November 30 of that year. He did not pay within the time specified, and on December 1, 1902, he was suspended from membership in the society. On December 22, 1902, he paid to the recorder of the local lodge the eleventh and twelfth assessments, and was thereupon re-instated. On January 24, 1903, he died.

The certificate upon which suit is brought provided that all assessments for the benefit fund should be paid within the time specified by the constitution, laws and rules of the order, and 'if not so paid the certificate should be void until payment had been made and the member re-instated to membership in the order. The constitution provided that notice of the assessment and of the time for its payment should be published in the official paper of the order, and mailing a copy of the paper to the post-office address of the member should be sufficient notice of the assessment. The constitution further provided that if a member, after notice of the levy of the benefit assessment, failed to pay the same on or before the last day of the month in which it was due he should be suspended, and during such suspension the certificate should be null and void. Section 89 of the constitution also provided that when a member had been suspended for the non-payment of assessments, dues or fines, he might be re-instated, *if in good health* and not engaged in any of the prohibited occupations, by the payment of the arrearages,

including current assessments, within sixty days from the date of suspension.

One of the defenses interposed by the defendant was that the deceased was not in good health at the time of his re-instatement on December 22, 1902, and was therefore not in good standing in the order when he died. It is not contended that there is an entire absence of proof in the record tending to prove that he was not at that time in good health, within the reasonable meaning of the constitutional provision of the order. There is evidence to the effect that he was not entirely free from disease, but that he was in reasonably good health. The testimony clearly tended to prove, and the preponderance of it is to the effect, that his death was not the result of any disease from which he was suffering at the time of his re-instatement. The question is one of fact, upon which the evidence was conflicting. The statute makes the judgment of affirmance by the Appellate Court conclusive against defendant. The question is not therefore open for review in this court.

The errors of law insisted upon, which are the only ones to be considered in this court, are, first, the exclusion of competent evidence. A witness named Boeller, on behalf of the defendant, was asked, among other questions, "Did you have any talk with him [the deceased] at any time about his health?" to which he answered, "Yes, I did," but on objection by counsel for the plaintiff he was not allowed to state what that conversation was. On re-examination, the court adhering to this former ruling, counsel for the defendant said: "Well, along that line I offered to prove certain statements made by the deceased showing that he was in a poor condition of health during the last few months of his life." Generally, when the fact is material, the declarations of the insured as to the condition of his health are competent. (*Towne* v. *Towne*, 191 Ill. 478; *VanFrank* v. *United States Masonic Benevolent Ass.* 158 id. 560; *Treat* v. *Merchants' Life Ass.* 198 id. 431.) The declarations here sought to be

shown were not limited to any particular time, and the only offer was to show certain statements made by the deceased that he was in poor health during the last few months of his life. Just what should be understood from these questions offered is not clear. But conceding that the offer was to prove, specifically, declarations of the insured as to the condition of his health at the time he was re-instated, and therefore competent under the foregoing authorities, we are still of the opinion that no reversible error was committed by the trial court in its refusal to allow the witness to answer the question. The widest latitude was allowed the defendant in its effort to prove that the deceased was not in good health, not only at the time of his re-instatement, which was the material question, but during the period of two years prior to his death. Dr. Murphy, Dr. Hunt and a number of his neighbors all testified that he had an affection of the throat which affected his vocal organs, so that he could only speak at times in a whisper. The witness Boeller was allowed to testify that his health was bad, having some trouble with his throat, and that he was unable to do farm work. In fact, all the evidence in the case is to the effect that he suffered more or less from a diseased throat, but the evidence justified the finding of the jury and the judgment of the Appellate Court that that ailment was not one of a serious nature, and that it in no way caused or contributed to his death.

The second contention is, that the court improperly refused to enter judgment for the defendant on the special finding of the jury. By one of these interrogatories the jury were asked the following question, "Was Carl A. Dinger in good health on December 22, 1902?" to which they answered, "In reasonably good health." And another, "Was Carl A. Dinger suffering from or affected by the disease known as chronic laryngitis on December 22, 1902?" and answered, "Yes." The contention is that the general verdict was contrary to these special findings. When special findings of fact are inconsistent with the general verdict the

former must control, and the judgment should be entered accordingly.  (Hurd's Stat. 1903, chap. 110, sec. 58c, p. 1408.)  The general verdict in this case was·not inconsistent with the special findings of the jury.  The answers to the special interrogatories may have been in perfect harmony with the weight of the evidence and still the re-instatement of the deceased perfectly valid.  The special findings of the jury are, in effect, that although he had chronic laryngitis, he was on December 22, 1902, in reasonably good health. The ninth instruction to the jury asked by the appellant and given was as follows:

"The court instructs the jury that the words 'good health,' when applied to a human being, mean that the person said to be in good health is in a reasonably good state of health, and that he is free from any disease or illness that tends seriously or permanently to weaken or impair the constitution."

This instruction gives a reasonable definition to the term "good health," and we think a correct one.  At all events, it is the defendant's own definition, and we see no good reason why it should not be bound by it.  Certainly, under that definition the special findings of the jury were in no sense inconsistent with the general verdict.

The third assignment of error raises the question as to the correctness of the ruling of the trial court in giving the second and fifth instructions on behalf of the plaintiff.  The second is as follows:

"The jury are instructed that the relation between the district courts and the supreme court of defendant is that of agency, and whatever the district court did, through its proper officer, in the matter of the suspension and re-instatement of Carl A. Dinger, is binding on the defendant."

The fifth instruction is:

"You are instructed that Morning Glory Court. No. 705 of the Court of Honor was an agent for the supreme court in all its dealings with the deceased, Carl A. Dinger; and if the jury believe, from the evidence, that said local court,

acting by its officer, the recorder, D. L. Berry, accepted from the said Carl A. Dinger assessments and general dues after his suspension on December 1, 1902, and re-instated him upon the books of said local lodge, and if the jury further believe, from the evidence, that the said Carl A. Dinger was a member in good standing upon the books of said local court at the time of his death, and that he had paid all assessments and general dues then owing by him to said order, that is evidence from which the jury might infer that the defendant waived the right to declare the contract of insurance forfeited."

It is insisted that both of these instructions ignored the provision of section 147 of appellant's constitution and by-laws, which provides that a district recorder is an agent of the district court, and not an agent of the Court of Honor. Admitting that the constitution and by-laws contain such a provision, yet under the facts and circumstances of this case as they appear in evidence the court was justified in assuming the contrary and in so instructing the jury. Upon the suspension of a member, if he paid his dues within sixty days after the delinquency he was entitled to be re-instated in the society, provided he was at that time in good health. All Dinger had to do, as far as his re-instatement was concerned, was to pay the amount of his delinquency to the recorder of the local society, and if he was in good health he had the right to be, and the record shows that he was in that provision, regularly re-instated to all his rights as a member of the order. We do not see how it can be seriously contended that the recorder of the district court in this respect did not act as the agent of the supreme court. We have held in several cases that in view of such facts the officers of the subordinate lodge act as the agents of the supreme lodge. *Grand Lodge A. O. U. W.* v. *Lachmann,* 199 Ill. 140.

It is also insisted that the fifth instruction is erroneous for the reason that it omits the principal issue in the case, namely, the condition of Dinger's health on December 22,

and it is insisted that under this instruction the jury would be justified in believing that the mere fact of Dinger's re-instatement upon the records of the local court would be evidence from which they would have a right to infer that the appellant had waived its right to adhere to the suspension of the insured, regardless of the manner in which the re-instatement was procured. We do not think the instruction is capable of the interpretation placed upon it by appellant. It tells the jury that if they believe, from the evidence, that the deceased was a member in good standing upon the books of the local court at the time of his death, and that he had paid all assessments and general dues then owing by him to the order, such facts were evidence from which the jury might infer that the defendant waived the right to declare the contract of insurance forfeited. He could not be in good standing unless he had been re-instated in compliance with the laws of the order, and in order to be re-instated he must have been in good health at the time of such re-instatement. This view is also strengthened by the fourth instruction given by the court on behalf of appellant, which was to the effect that if the jury believed, from the evidence, that on December 22, 1902, the deceased paid assessment No. 11, and that at the time of such payment he was not in good health, then he could not become lawfully re-instated. Taking all of the instructions given, as a whole, we do not think the jury were misled to the injury of appellant. The real question in the case was whether the insured was in good health at the time of his re-instatement.

Complaint is made of the refusal of the court to give to the jury an instruction to the effect that if they believed that the deceased was properly suspended and on December 22 attempted to be re-instated, that his payment was accepted, that he was not in good health, and that his disease was unknown to the defendant at the time of the receipt of the payment, then the prior suspension was not waived by the receipt of the money. It is insisted that this instruction con-

tains an element not touched upon by any others given, namely, that if Dinger, on December 22, 1902, was, as a matter of fact, not in good health, and that such state of health was unknown to appellant, the receipt of the money was not a waiver of his suspension. An examination of the other instructions given will show that this contention is not well founded. We think the jury were fully instructed as to the elements necessary to constitute a waiver, and also as to the requirement that the deceased must have been in good health to entitle him to be properly re-instated.

Over the objection of appellant a receipt was offered in evidence, dated January 26, 1903, for assessment No. 1, amounting to $1.10. It is claimed that this receipt was given and the money paid two days after Dinger's death. We do not see how this receipt was material or in any way affected the case. If the money was paid after Dinger's death it would have no affect whatever on his suspension or re-instatement or his standing in the order at the time of his death.

We find no reversible error, and the judgment will be affirmed.

*Judgment affirmed.*