## Maud M. Pegram et al., Appellees, v. Mutual Protective League, Appellant.

1. FRATERNAL BENEFIT SOCIETIES—*when re-instatement obtained by fraud sustained.* Notwithstanding a re-instatement may have been obtained by fraudulent representations, if such representations at the time of the re-instatement were known to the society to be false and the re-instatement none the less made, a waiver is established and the re-instatement will be sustained.

2. FRATERNAL BENEFIT SOCIETIES—*presumption as to amount of assessment.* In an action to recover for death benefits, the amount which the beneficiary is entitled to recover is presumed to be the full amount of the certificate in the absence of evidence that an assessment would not realize such amount.

3. INSTRUCTIONS—*predicated upon evidence.* Instructions are properly refused which are not supported by any evidence in the record.

4. EVIDENCE—*propriety of leading questions.* If a witness when called by counsel gives unexpected testimony it is proper to permit counsel to interrogate such witness by leading questions for the purpose of refreshing his recollection, if he appears forgetful, or for the purpose of probing or pricking his conscience and moving him to relent and speak the truth if he has wilfully erred.

5. TRIAL—*what not objection to remarks of court.* An objection to a ruling made by the court is not an objection to the remarks made in making such ruling; in order to save for review the propriety of the language employed by the court an objection thereto must be specifically made.

Assumpsit. Appeal from the Circuit Court of Greene county; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the May term, 1910. Affirmed. Opinion filed December 7, 1910.

FRANK A. WHITESIDE, for appellant.

RAINEY & JONES, for appellees.

MR. JUSTICE BAUME delivered the opinion of the court.

On January 9, 1900, the defendant, a fraternal benefit society, issued to Nathaniel H. Pegram as a member of Council No. 54 located at Carrollton, its benefit cer-

tificate, whereby it agreed upon his death provided he had, while a member, complied with its charter, constitution, laws, rules and regulations, to pay from its benefit fund to his wife, Nellie Jane Pegram, the amount of one assessment not exceeding the sum of $2,000. Nellie Jane Pegram, the beneficiary named in said certificate, died in 1904 or 1905, and the insured, Nathaniel H. Pegram, not having remarried, died on November 12, 1908, leaving the plaintiffs, his children and only heirs at law. The defendant having denied its liability upon said benefit certificate, the plaintiffs instituted this suit to recover the amount thereof, and upon a trial in the Circuit Court of Greene county were awarded a verdict for $2,075. Plaintiffs remitted $75 from said verdict and judgment was thereupon entered by the court against the defendant for $2,000, from which judgment it prosecutes this appeal.

The provisions of the constitution and by-laws of the defendant society relating to the payment of assessments, the suspension of members, and the re-instatement of members so suspended, are, as follows:

"Sec. 178. If a member fails to pay the assessments or dues on or before the 1st of the month following that in which they become due or payable * * * he shall stand suspended, and during such suspension his Benefit Certificate shall be null and void.

"Sec. 179. A member re-instating shall make application on form prescribed by the Supreme Board of Directors assuring good health at the time of making application.

"Sec. 180. When a member has been suspended for less than 60 days for non-payment of assessments, dues or fines he may be re-instated if in good health and not engaged in any of the prohibited occupations, by payment of all arrearages, including current assessments and dues."

Prior to his suspension on October 1, 1908, for non-payment of the assessment then due, the deceased had paid all assessments called by the defendant society except the assessment due on September 1, 1908, which

had been paid for by Samuel Graves, the local secretary of the defendant society at Carrollton. At or about the time when the deceased received notice of his suspension he was taken sick, and at the solicitation of some members of his family, his brother, Baker Pegram, went to his home for the purpose of procuring his re-instatement. The evidence relating to the circumstances under which an application for re-instatement was procured and executed by the deceased and returned to Graves, whereby it is claimed that the deceased became re-instated in the defendant society, is conflicting. Baker Pegram, the brother of the deceased, testified that he procured a check signed by his brother wherein the amount was left blank and went to Carrollton for the purpose of interviewing Graves, the local secretary, and ascertaining what was necessary to be done to procure his brother's re-instatement; that when he saw Graves he informed him that the deceased was sick and desired to be re-instated; that Graves told him it would be necessary for the deceased to sign a re-instatement blank and have his signature thereto witnessed, that he (Graves) did not have such blank with him but could procure one at his office; that Graves got into the buggy with him and they drove around town endeavoring to find one Spiker, who Graves said had the keys to the secretary's office, or to the lodge room; that they were unsuccessful in their effort to find Spiker, and Graves told him he would send a re-instatement blank to the deceased by mail; that he gave Graves the check which he had procured from the deceased in payment of the assessment due October 1st, and also of the assessment due September 1st which had been advanced by Graves; that the re-instatement blank was received by the deceased from Graves on the following day and was then signed by the deceased and witnessed by John Cordes.

Nathaniel H. Pegram, a son of the deceased, testified

that after the re-instatement blank was signed by his father he took the same to Graves who then asked him how his father was, to which inquiry he replied that his father was about the same as he was the day before. He further testified that upon a subsequent occasion he paid to Graves the assessment due November 1st and then told Graves in answer to the latter's inquiry as to how the deceased was, that his father was sick and worse. The deceased died on November 12th, following, without having fully recovered from his illness.

The re-instatement blank which was signed by the deceased and received and accepted by Graves, and by him immediately forwarded to the head office of the defendant society, where the deceased was formally entered as re-instated, is as follows:

"I, Nathaniel H. Pegram, a member of Carrollton Council, No. 54 located at Carrollton, in the State of Illinois, and holding Benefit Certificate No. 9607, for $2000.00 having been suspended on the first day of October, 1908, for the non-payment of Monthly Payment No. 10 (or non-payment of Council Dues in advance for quarterly term ending . . . . . . . 190 . . .) do hereby on my honor as a member of the Mutual Protective League, certify that I am in good physical and mental health; that I have been since the date of my suspension, and am now free from any sickness whatever; and agree that if this statement is found to be a misrepresentation of my present physical condition, my Benefit Certificate shall become null and void, and of no binding force whatever. I hereby apply for re-instatement to full membership.

Witness my hand this 19 day of October, 1908.

NATHANIEL H. PEGRAM.
(Applicant sign here)

JOHN CORDES
(Witness sign here)"

Samuel Graves, the local secretary of the defendant society, when called as a witness corroborated the testimony of the witnesses Baker and Nathaniel H. Pegram relative to the procuring of the re-instate-

ment blank and the payment of the assessments, but denied that he had any knowledge of the illness of the deceased, or that he was informed by either of said parties that the deceased was sick, or otherwise than in good health, at the time in question.

A careful consideration of the evidence as it appears in the record discloses facts and circumstances, a detailed discussion of which would unduly extend this opinion, tending to support the contention of the plaintiffs that Graves was fully informed of the sickness of the deceased when he suggested the necessity of having the deceased sign an application for re-instatement and received and accepted such application, together with the unpaid assessments.

The defendant does not controvert the proposition well established in this state that the duties imposed upon Graves by its constitution and by-laws as the secretary of the local or subordinate council necessarily constituted him the agent of the supreme council of the defendant benefit society, but it is insisted that as the deceased was sick at the time of his application for re-instatement he could not become re-instated as a member of the defendant society so as to validate his certificate. The question involved is wholly one of waiver, and we perceive no reason why waiver may not be as operative to prevent a forfeiture of the re-instatement of a suspended member of a fraternal benefit society, where such re-instatement has been procured by representations known to such society to be false, as it is to prevent the forfeiture of an original certificate, where such certificate has been procured by representations known by the society to be false, when the same was issued.

In Mutual Protective League v. Langsdorf, 126 Ill. App. 572, referred to by counsel for defendant as being analogous to the case under consideration, it was expressly held that there was no competent evidence in the record tending to show a waiver by the society of

the ground of forfeiture relied upon by it.    The absence of this element in the case cited completely destroys the supposed analogy between it, and the case at bar.

The contention of defendant that the allegation in the declaration that the plaintiffs were entitled to recover the sum of $2,000 under the certificate in question, together with the absence of proof that that amount would be realized by one assessment, is insufficient to warrant a verdict and judgment against it for $2,000, may be disposed of on the authority of Covenant Mut. Life Ass'n. v. Kentner, 188 Ill. 431, where it was held that the damages are presumed to be the full amount of the certificate in the absence of evidence that they are less, and that it devolves upon the insurer to show that an assessment would not have realized the amount of the claim.

The 1st, 2nd, 3rd and 4th instructions given at the instance of the plaintiffs informed the jury in somewhat varying phraseology that although they believed from the evidence that the deceased made false statements or misrepresentations as to his health in his application for re-instatement, yet if they also believed from the evidence that at the time such statements were so made to or received by the local secretary Graves, said Graves knew such statements were not true but false, and that he had knowledge of the true facts as to the condition of health of the deceased, then in that case such statements did not constitute fraudulent representations of which the defendant could avail itself as a defense.    The instructions state the law with substantial accuracy.    That the defendant understood such to be the law applicable to the case is evident from an examination of the 1st, 4th and 5th instructions given at its instance, in each of which proof of the like facts was recognized as constituting a waiver by the defendant.

The 1st, 3rd, 4th, 5th and 6th instructions tendered by defendant and refused by the court would have

advised the jury that the facts relied upon by the plaintiffs as constituting a waiver although established by a preponderance of the evidence were insufficient to operate as a waiver of the forfeiture claimed by the defendant, and were therefore properly refused. The 2nd instruction offered by defendant and refused by the court, which assumed that Baker Pegram acted as the agent of the defendant in procuring the re-instatement of the deceased, was properly refused as being wholly unsupported by the evidence.

Upon the trial Samuel Graves, the secretary of the local council, was called as a witness by the plaintiffs and examined in chief as to his duties as such secretary, the payment of the assessments which had accrued upon the certificate in question and some other matters not now necessary to be noticed. Upon his cross examination by counsel for the defendant Graves stated in detail the manner in which the deceased's application for re-instatement had been procured and came into his possession, and denied specifically that he then had any knowledge that the deceased was sick, and that he had been so informed by Baker and Nathaniel Pegram. Upon his re-direct examination by counsel for plaintiffs he was asked the following question: "I will ask you to state whether or not you told me that Mr. Baker Pegram at the time he paid you the money for these dues, told you that Nathaniel H. Pegram was sick?" Upon objection by counsel for defendant as to the form and substance of the question the court remarked: "The objection will be sustained unless counsel for plaintiffs will state to the court that he is surprised by the testimony of the witness, that it is not in accordance with what he expected it to be, and will move the court for leave to ask the witness leading questions to prod his recollection and prick his conscience." Counsel for plaintiffs then stated: "I now make the statement that the testimony of this witness is a surprise to me, and that it is not in ac-

Pegram v. Mutual Protective League, 159 Ill. App. 214.

cordance with what I expected it to be upon the question of his knowledge of the condition of Nathaniel H. Pegram's health at the time of his re-instatement and the payment of the arrears which were made at that time, and I move the court for leave to ask this witness leading questions for the purpose of prodding his recollection and pricking his conscience.'' The court then said: ''Leave is granted, he may now answer the question.'' The exception noted in the record is as follows: ''Defendant excepts.'' The answer of the witness to the question was, ''No sir.'' Thereafter the witness was further fully interrogated by counsel for plaintiffs concerning certain statements claimed to have been made by the witness for the purpose of probing his recollection with reference thereto and as to certain incidents relating to the questions involved, to which further examination of the witness no objection was interposed until the subject had been exhausted. It is insisted on behalf of defendant that the language employed by the trial judge in ruling upon the objection interposed was equivalent to a suggestion or intimation by him that the recollection of the witness needed prodding and his conscience required pricking in order that he might testify truthfully, and that such language necessarily operated to discredit the witness with the jury and was prejudicial to defendant. The rule in this state is that when a witness unexpectedly gives testimony against the party calling him which is at variance with prior statements made by the witness, such party has the right to interrogate such witness for the purpose of refreshing his recollection if he appears forgetful, or to probe or prick his conscience and move him to relent and speak the truth if he is willfully erring. Chicago City Ry. Co. v. Gregory, 221 Ill. 591; People v. Lukoszus, 242 Ill. 101. The statement of counsel for plaintiffs that he was surprised by the testimony of the witness justified the court in permitting a further examination of the witness, under the rule as

thus stated and as announced by the trial court. The objection by counsel for defendant was not directed to the language employed by the trial court in announcing the rule, but merely to the ruling of the court permitting counsel for plaintiffs to pursue the line of examination authorized by the rule as stated.

If defendant desired to preserve for review the propriety of the language employed by the court, it should have objected and excepted thereto at the time. Mulliner v. Bronson, 114 Ill. 510; Lanquist v. City of Chicago, 200 Ill. 69. Furthermore, the insistence that the language employed by the court was prejudicial to defendant is evidently an afterthought on the part of counsel, because the point is not made in either the motion for a new trial in the court below or in the assignment of errors in this court.

There is no reversible error in the record and the judgment of the Circuit Court is affirmed.

*Affirmed.*