Anastasia Quinn, Appellee, v. North American Union, Appellant.

Gen. No. 15,472.

1. FRATERNAL BENEFIT SOCIETIES—*what constitutes contract of insurance.* The contract of insurance between the parties consists of the benefit certificate, the laws of the society and the application.

2. FRATERNAL BENEFIT SOCIETIES—*presumption as to notice of by-laws.* The members of a fraternal benefit society are conclusively presumed to have notice of and be bound by its by-laws.

3. FRATERNAL BENEFIT SOCIETIES—*effect of proofs of loss showing death while engaged in prohibited occupation.* If a plaintiff suing upon a benefit certificate puts in evidence proofs of loss which show that death resulted to the insured while engaged in a prohibited occupation, it is proper for the court to act upon such showing and instruct the jury accordingly.

4. FRATERNAL BENEFIT SOCIETIES—*when engagement in prohibited occupation precludes recovery.* If the insured contrary to the terms of the contract with the society engages in a prohibited occupation and while engaged therein meets death, no recovery upon the certificate will be sustained.

5. FRATERNAL BENEFIT SOCIETIES—*when limitations of liability with respect to occupations not unreasonable.* Fraternal benefit societies have a right to limit their insurance to persons not engaged in hazardous or extrahazardous employments. *Held*, in this case, that the limitation against engaging in the occupation of railroad switchman etc., was not unreasonable.

Assumpsit. Appeal from the Circuit Court of Cook county; the Hon. ALBERT M. ROSE, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1909. Reversed and finding here. Opinion filed May 31, 1911.

**Statement by the Court.** Anastasia Quinn (appellee) recovered a judgment for $2,000 against the North American Union (appellant) in the Circuit Court of Cook County, upon a benefit certificate issued by that organization to one Frank A. Quinn, the deceased husband of appellee.

The declaration consists of but one count, based upon the benefit certificate in question, and alleges that Quinn died while he was a member, in good standing, of that organization.

Appellant filed a plea of general issue, and also filed a special plea, in which it was alleged that, as a condition of accepting Quinn as a member of the organization, it was expressly provided that he should comply with all its laws, rules and regulations,—that being made a material part of the contract; that the laws of the Association, during the entire time of his membership, provided that if Quinn should at any time become engaged in the occupation of a railroad switchman, or railroad brakeman on freight trains, his membership should thereby and therein terminate, and all rights, interests, etc., should be forfeited and absolutely terminated without proceedings for expulsion or otherwise.

It was further alleged in this special plea that the laws of appellant, at the date of the certificate, and continuously until the date of the death of Quinn, expressly forbade any member engaging in the occupation of railroad switchman, or railroad brakeman on freight trains, and that, after he became a member of the organization, and in violation of the agreement on his part, and of the laws, rules and usages of the organization, he entered into and became engaged in the occupation of a railroad brakeman on freight trains, and that his death was occasioned while he was employed and engaged in said occupation; that by reason thereof his membership became terminated before his death.

A jury trial was had, resulting in a verdict for appellee, upon which, after overruling a motion for a new trial, the court entered judgment January 9, 1909. Appellant assigns as error improper instructions given on behalf of the plaintiff, and improper refusal of instructions asked on its be-

half, and error in overruling its motion for new trial, and further that the verdict and judgment are each clearly against the law and the evidence.

R. E. Hamilton, for appellant.

D. G. Ramsay and I. W. Foltz, for appellee.

Mr. Justice Baldwin delivered the opinion of the court.

The benefit certificate sued on was dated August 23, 1905. In his written examination and his application for membership in the organization, Quinn stated that his occupation was that of a foreman in a foundry. By the terms of the beneficiary certificate, this application was made a part of the contract. In it, it was further expressly represented and declared that he was not then engaged in any of the following occupations or employments: "Railroad switchman, brakeman, on freight trains, yard master," and various other occupations, generally deemed hazardous. And he added the following, "Should I become addicted, or actively engaged in any of the above enumerated occupations or employments, my so doing shall forfeit and absolutely terminate thereafter, all rights, interests, benefits, or privileges of myself, my family, heirs, dependents or beneficiaries, without proceedings for expulsion, or otherwise, on the part of said association."

On the trial, plaintiff made her case by offering the benefit certificate in question, also the written examination and application of the deceased signed by him and by the medical examiner, dated August 6, 1905; the application for membership dated July 28, 1905, signed by the deceased; a pamphlet book designated as "Constitution and Laws of the North American Union;" proofs of death of the deceased, consisting of several documents, the first being a certificate mentioning the written designation or appointment by the president of the local council of three of its members to constitute a committee "to report to the council its findings, together with all facts relating to the death of said Francis A. Quinn;" (2) written report, signed by the three members

of the committee,—addressed to the president, officers and members of the council, and containing the recital, "that his death was caused by accident switching cars Penn. Co.," on the 8th day of April, 1906.

As further portions of the so-called proofs of death, there were submitted to the jury the several affidavits of D. J. O'Brien, M. J. Kennally, and J. N. Brucks, respectively, they being members of the committee which made the foregoing report.

In the affidavit of D. J. O'Brien, it was stated that "the said F. A. Quinn, deceased, at the time of and immediately preceding his said death, was engaged in the occupation of switching cars in the Penn. Ry. Co.," * * * "and the duties of his employment were switching, and that he is reputed to have died from switching," and that he had been engaged in the occupation of "Foreman & switching about three months."

Kennally's affidavit said that the said F. A. Quinn, deceased, "at the time and immediately preceding his said death, was engaged in the occupation of switching cars in the Penn. Ry. Co." * * * "and the duties of his employment were switching cars," * * * and preceding his death he had been engaged as "foreman & Switching for about three months."

The affidavit of Brucks stated: "That the said F. A. Quinn, deceased, at the time of and immediately preceding his said death was enaged in the occupation of switching cars in the Penn. Ry. Co." * * * "and the duties of his employment were switching," etc.

There was further offered a page of the collector's cash book of the council to which the deceased belonged, showing the payment by Quinn of the monthly premium and council dues, in the month of April, 1906.

There was also offered the verdict of the coroner's jury, which was apparently in regular form, and in which it was recited that the deceased came to his death on the 8th day of April, 1906, on the tracks of the P. F. W. & C. Ry. Co., near Forty-eighth street, from shock and injuries received by

being crushed between engine beam of engine No. 7340 and gondola car, said engine was staking from north end of track No. 8 at above mentioned point on said April 8th, "while deceased was in discharge of his duties as a yard brakeman for the P. F. W. & C. Ry. Co., said engine and car owned and operated by the P. F. W. & C. Ry. Co."

There was also admitted the certificate of the undertaker, upon the back of which was the following endorsement by Robert S. Iles, Supreme President of the Order:

"May 15, '06. Proof shows that deceased was engaged in prohibited occupation, and met his death in such occupation. Insurance forfeited thereby.    Iles."

In addition to the foregoing, the plaintiff herself testified, that she was the plaintiff and the wife of the deceased, and the same person designated in the benefit certificate. She further testified that her husband had worked for the American Steel Foundry at Indiana Harbor, and she said: "It was about three months before his death that he worked there."

This constituted the evidence on behalf of the plaintiff, and at this point the defendant moved the court to give a peremptory instruction in its favor. This motion the court denied, upon the ground that, in the opinion of the trial judge, the evidence and the coroner's findings, while they had been properly admitted to show the fact of the death, were not offered for the purpose of showing the manner, but the fact, of his death, and further, that the plaintiff was not concluded upon the question as to how the deceased came to his death by the documents offered.  The court, in finally passing upon the motion said:  "I cannot entertain this motion now," to which action defendant excepted.  However, by its subsequent procedure, appellant waived its right to here insist upon its rights under that motion.

Thereupon, the defendant put in its testimony,—the first witness called by it being William J. Quinn, a brother of the deceased, from whom, as well as from Patrick Hanrahan (also called as a witness), no important testimony was adduced.

One Peter Kiner was called and testified that he was a yard brakeman for the Pennsylvania Railroad Company; that he knew Frank Quinn, also known as Francis A. Quinn; that he met his death on the 8th of April, 1906. He says, "I was braking trains; had charge of braking up trains. Quinn was with me. I do not remember exactly who the other fellow was. There were generally three of us on the job. There was one more that was there. At least I think so. There should have been. We were braking up trains that would come from different roads. There were trains that would come from the Q., or the Northwestern, or the St. Paul. I mean freight trains. * * * We had a track of cars to pull over from south of Fifty-seventy street. We were going to pull them north of Fifty-first and put them on another track,—about 30 or 33 cars. Mr. Quinn was following the engine; that is, he was supposed to take the engine around, and when he got these cars on the engine, he would bring them back again."

Upon cross-examination the witness stated, that he did not know for what purpose Quinn was engaged by the railroad company. "In railroad service they have what are called freight train brakemen. Their line of work is different from the rest. I am a yard brakeman. At the time Quinn was injured he was staking a freight car. My line of work as yard brakeman is different from freight brakeman."

Upon redirect examination, he said: "I was working with Frank A. Quinn at 7 o'clock in the morning until the time of the accident. During the day we worked between Forty-seventh and Fifty-first streets on the same kind of work. We were switching cars all that day—why, not exactly switching all that time."

Under recross-examination, he was asked by counsel for appellee:

"Q. The counsel referred to switching. The man was not employed as switchman? A. Not classed as switchman.

Q. In handling cars in the railroad there are different classes of men who perform different duties, such as passen-

ger brakeman, freight brakeman, yard brakeman, etc., are there not? A. Yes, sir; there are passenger, freight and yard."

One George H. Dow was then called as a witness and testified as to the details of the accident resulting in the death, and said:

"We were handling what they called gondolas, flat cars and box cars. We get all kinds in the freight yard. We were not handling a train. We were not all handling box cars at the time of the accident.

"Q. At the time of the accident and death, how many cars did you have coupled together? A. Not over thirty-five.

Q. Probably thirty-five? A. The tracks won't hold any more than that. I was working for Mr. Quinn since 7 o'clock that morning."

One M. F. Nagel, a locomotive engineer for the Pennsylvania Railway Company, then testified as to the details of the accident, and that he had been acquainted with Mr. Quinn since about the first of the year when witness was firing on the ice tracks, and that at the time of the accident Quinn was carrying the signals to the engineer "to back up, or go ahead, or stop, whatever he wants done."

Witness testified on cross-examination that he didn't remember whether he was pulling out a train of cars. "There was a number of cars," but "there is no train in the yard."

"Q. And no road engine or caboose? A. No, sir.

Q. No caboose? A. No, just freight cars; that is all."

Following the testimony of this witness, the defense introduced certified copy of the finding of the coroner's inquisition. The original had been received as a part of the plaintiff's case, and when this certified copy was offered objection was made by appellee, who sought to limit the purpose for which it should be offered, but appellant insisted that it was offered for all purposes, and it was so admitted.

We have thus fully set out the important parts of the testimony offered in order that it may all be considered together in passing upon the controlling question in this case.

It is contended on behalf of appellant that the contract

between the parties consists of the benefit certificate of membership sued on in this case,—the laws of the Society,—and the application and certificate signed by the deceased, and that all should be considered together.

We think this contention is clearly sustained by the authorities: Lehman v. Clark, 174 Ill. 286; Alexander v. Parker, 144 Ill. 355; Wallace v. Madden, 168 Ill. 366; Lahey v. Ancient Order of Hibernians, 54 Ill App. 108; Home Ins. Co. v. Favorite, 46 Ill. 263.

It is doubtless true also, that the members of a mutual benefit society like appellant are conclusively presumed to have notice of and be bound by its by-laws. See Benes v. Knights & Ladies of Honor, 231 Ill. 139. In this case, at least, it clearly appears that the deceased was fully aware of the conditions which would violate his certificate.

This Society has long been governed by laws which provide that persons who are engaged in the certain designated occupations are not considered suitable risks, and are ineligible for membership in the order, to wit: "Railroad switchmen, brakemen, except those who are employed on passenger trains, yard masters," etc., and it is further provided that "any member of the order who shall, after obtaining membership therein, become engaged in or pursue any business or employment enumerated in section 2 (railroad switchmen, etc.), * * * shall stand suspended from the order by operation of law, without notice, and forfeit all interest in the Mortuary and Reserve Funds from and after the date of engaging in such prohibited business," and we cannot say that these laws impose unreasonable or unjust conditions upon its members.

These laws, when taken in conjunction with the written certificate and application signed by deceased, under the proofs in this case, clearly constitute a defense on the part of the appellant. The coroner's inquisition, and the several affidavits, and the report of the committee were admissible in evidence, and having been admitted on behalf of the plaintiff as a part of her case, were properly before the court and jury for all purposes; and though the recitals therein as to the

manner in which deceased came to his death are not conclusive upon appellee, nevertheless, as she offered no other evidence upon the point, the court should, at the close of the plaintiff's case, have given the peremptory instructions requested by defendant.

The Supreme Court, in speaking of certain documentary evidence before the trial court, said: "It was introduced as evidence, and like any other testimony, must be considered in all its parts, and effect must be given to all it proves or tends to prove." N. A. Fire Ins. Co. v. Zaenger, 63 Ill. 464–7. See also, Cont. Ins. Co. v. Hulman & Cox, 92 Ill. 145.

We think it clear, from the evidence offered by the plaintiff, which included the report and affidavits of the members of the committee and the coroner's finding, even without the oral testimony offered on behalf of the defendant, from which we have above quoted quite fully, that the deceased had violated the conditions of his policy, and was in fact engaged at the time of his death, and had been for some time previously, in a prohibited employment, both as railroad switchman, and as a railroad brakeman on freight trains, as these terms are generally understood, and as they were used in the contract between the deceased and appellant, and, therefore, that the verdict and judgment cannot stand.   There was no proof tending to show that the words in the application, benefit certificate, etc., were used in any restricted or technical sense, and we are compelled to construe them in their ordinary sense and application.   Thus construed and applied, we think the case plain.

Clearly this organization, and others similarly constituted, have a right to limit their insurance to persons not engaged in hazardous or extra hazardous employment, and we do not regard the limitations insisted upon in this case as being unreasonable, and we think any fair and reasonable construction of the testimony in this case clearly compels the conclusion we have reached.

Much might be said in favor of, and little against, the policy of limiting insurance to those who do not engage in extra hazardous employment.   It is manifest that such a course is necessary if the organization is to continue insur-

ing its members,—unless, indeed, the rate be so largely increased as to make it practically prohibitory. But even if the wisdom of the policy were not thus apparent, it was clearly so contracted by the deceased and appellant, and we have no discretion in the matter, but must declare judgment upon the contract as made.

Being thus satisfied that the proofs do not sustain the alleged cause of action, we are compelled to reverse the judgment of the court below, and to enter judgment here against appellee upon a finding of facts.

*Reversed, and judgment here.*