## Elizabeth O'Brien, Appellee, v. Catholic Order of Foresters, Appellant.

### Gen. No. 17,042.

1. INSURANCE—*when subordinate lodge may waive hazardous occupation by-law.* A subordinate lodge of a fraternal insurance society is the agent of the supreme lodge and may waive a by-law terminating membership if the insured changes his occupation to that of railroad switchman by accepting dues and assessments with full knowledge of all the facts constituting a violation of the by-law.

2. INSURANCE—*when notice to officers is notice to fraternal society.* Where it is claimed that a by-law of a fraternal insurance society prohibiting extra hazardous occupations was waived, notice to a recording secretary, who was required to keep a descriptive roll of the members' occupations, that a member had changed his occupation to that of railroad brakeman, is notice to the society.

3. INSURANCE—*when waiver of hazardous occupation by-law is for the jury.* A member of a subordinate lodge of a fraternal insurance society requested a withdrawal card from the recording secretary of the supreme lodge as he had changed to an extra hazardous occupation prohibited by the by-laws of the supreme lodge. The evidence was conflicting whether the recording secretary who was required to keep a descriptive roll of the members' occupations told him to let the matter rest until he saw him again. The financial secretary was the only legal receiver of assessments, but it was the custom of the recording secretary to collect from delinquents. Subsequent dues were paid to the financial secretary and receipted for by him. *Held*, whether the forfeiture under the by-law was waived by the supreme lodge was a question for the jury.

4. INSURANCE—*when instruction on effect of notice to officer is properly modified.* Where a member of a fraternal insurance society changed to an extra hazardous occupation prohibited by the by-laws and his father notified the recording secretary, an instruction on the theory that the father and the secretary acted in collusion stating that if the secretary said to keep still and say nothing about the change the society was not bound by the notice is properly modified by requiring the jury to find that there was an understanding that the change in occupation was not to be reported.

5. INSURANCE—*when instructions as to payment of assessment may be refused.* In an action on a death benefit certificate, an instruction that the financial secretary was the only legal receiver

O'Brien v. Catholic Order of Foresters, 172 Ill. App. 638.

of. payments of dues and assessments may be refused when the evidence is undisputed that payments made to the recording secretary were, in fact, delivered to the financial secretary.

Appeal from the County Court of Cook county; the Hon. WILLIAM C. DE WOLF, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed. Opinion filed October 3, 1912.

EDMUND S. CUMMINGS, for appellant.

JOHN H. LALLY, for appellee.

MR. JUSTICE FITCH delivered the opinion of the court.

This is an appeal from a judgment for $1,000 recovered by appellee from appellant upon a benefit certificate issued by appellant to William J. O'Brien, the deceased husband of appellee. The certificate was issued on January 28, 1907, and contains a provision that the amount thereof is payable to appellee upon due proof of the fact and cause of the death of William J. O'Brien, and upon condition that he should, at the time of his death, be a member of the appellant society in good standing, and should have complied with all the by-laws thereof. When the certificate was issued, O'Brien was a clerk for the Griffin Car Wheel Company. In the month of May following, he obtained employment as a railroad switchman in the yards of the Pennsylvania Railroad Company, and on September 15, 1907, was killed.

The by-laws of the appellant society contain a provision to the effect that railroad switchmen in yards are ineligible to regular membership in the society, and another to the effect that any member who changes his occupation from either the ordinary class (including such employes as clerks) or the hazardous class (including railroad trainmen and the like) to the prohibited class, ''shall by that fact lose his membership in the order.'' The defense of appellant in the trial

court was based upon these provisions of the by-laws. At the beginning of the trial appellee's counsel admitted that such a change of occupation had occurred after the deceased became a member of the society, and said that he based appellee's right to recover upon the fact (as claimed by appellee) that the appellant, with full knowledge of the facts, had waived this provision of the by-laws. The errors assigned and discussed in the briefs of counsel are: First, the court erred in refusing to direct a verdict for the defendant; second, the court erroneously modified one instruction and refused another; third, there is no competent evidence that proofs of death were submitted.

It appeared from the evidence that the deceased and his father, John F. O'Brien, were members of Unity Court, a subordinate lodge of the appellant society; that Joseph Costello was the financial secretary, and Patrick J. Fitzgibbons was the recording secretary of the court, at the time of the occurrences in question. The by-laws require that all assessments, dues and fines be paid to the financial secretary, "who shall be the only legal receiver, on the part of the court, of any and all such payments; * * * and any other officer or member who accepts or receives any moneys in payment of any assessment, dues or fine for a member. shall be considered the agent of such member, and any such moneys paid to such agent of a member shall in no case be construed or operate as a payment of an assessment, dues or fine for the member to the court or order until such agent has paid such moneys to the financial secretary." The by-laws require the recording secretary to perform many duties, among which are, that he shall keep a "descriptive roll" of all members in a book, showing their names, ages, occupations, class of risk, residence, date of admission, etc.; shall sign all benefit certificates and deliver them to the members; conduct all correspondence; notify the financial secretary of any fines im-

posed or remitted, and of any charges to be made on any member's account; shall attend every regular meeting of the court under a penalty of a money fine for a failure to do so without a reasonable excuse; "shall mark all communications with the date of their receipt and present the same to the court at its next regular meeting;" shall sign all vouchers drawn on the treasury; shall, within twenty-four hours after each meeting, forward to the high secretary notice of all members admitted to the court, "together with such other data required by these laws under penalty of a fine, as elsewhere provided;" shall make regular reports of various kinds, among which are reports to the high secretary, noting any changes in membership of the court which may have occurred; "when a death occurs in the court he shall forward official notice of the same, by letter, to the deputy high chief ranger and to the high secretary without delay;" and shall receive such compensation for his services as the court may determine.

The evidence on behalf of appellee tended to prove that when the deceased changed his occupation, as above stated, his father told Fitzgibbons, the recording secretary, of that fact and requested a "withdrawal card" for his son, saying that the son would not be willing to pay the increased rate required for the extra hazardous occupation; that his son was not going to switch very long, and that it was only a temporary change. To this Fitzgibbons replied, "Let the matter rest and say nothing until I see you again; members are too hard to get to let him go for that," or words to that effect; that several months after this conversation, appellee received a communication from the court with reference to the dues and assessments of her husband; that she took the letter, with the amount of the dues and assessments, to John F. O'Brien, who paid the amount due to Fitzgibbons, and the latter marked it "paid" in the pass book of

William O'Brien, and at once turned over such payment to Costello, the financial secretary; that the following month, September 15th, the father paid directly to Costello, the financial secretary, the subsequent dues and assessments which had then accrued, and thereupon Costello signed his name in the same pass book immediately under the prior signature of Fitzgibbons. Fitzgibbons does not deny that he had a conversation with John F. O'Brien, in which the latter told the former of a change in occupation upon the part of the deceased, but testified that the conversation was merely to the effect that the deceased had changed his occupation to "railroading," without saying the new occupation was that of a switchman in a railroad yard.

It also appeared from the evidence that it was the custom in Unity Court for the financial secretary to read aloud, at each meeting, the names of those who were delinquent in the payment of dues and assessments, and thereupon, the recording secretary, or members who were acquainted with the delinquents, would be requested, or would volunteer, to see the delinquent member and endeavor to persuade him to pay up his back dues and assessments; and that in this manner payments were frequently made to the recording secretary and other members, who would, in turn, pay them to the financial secretary.

The question then arises, whether the facts and circumstances above recited constitute a waiver on the part of the appellant society of that provision of the by-laws by which a benefit certificate is made void by the mere fact that the insured changes his occupation to that of a switchman in a railroad yard. It is undoubtedly the law, that in the absence of any waiver or estoppel on the part of a fraternal insurance society, no recovery can be had on the certificate, where a by-law like the one in question has been violated. Quinn v. North American Union, 162 Ill. App. 319. The

provisions of a by-law may, however, be waived by the society. Wood v. Mystic Circle, 212 Ill. 532. A subordinate lodge of such a society is the agent of the supreme lodge, and may waive such a by-law by accepting dues and assessments with full knowledge of all the facts constituting the violation. Jones v. Knights of Honor, 236 Ill. 113; Coverdale v. Royal Arcanum, 193 Ill. 91; Grand Lodge, etc., v. Lachmann, 199 Ill. 140; Court of Honor v. Dinger, 221 Ill. 176; High Court I. O. F. v. Schweitzer, 171 Ill. 325; Railway Conductors' Benefit Association v. Tucker, 157 Ill. 194. Knowledge of the facts communicated to, or received by officers having the authority to act, or the duty of acting, in the matter is generally imputed to the society. Court of Honor v. Dinger, *supra;* Walker v. American Order of Foresters, 162 Ill. App. 30; Pegram v. Mutual Protective League, 159 Ill. App. 214; Kidder v. Supreme Assembly, etc., 154 Ill. App. 489; Plattdeutsche Grot Gilde v. Ross, 117 Ill. App. 247; Whigham v. I. O. F., 44 Ore. 543; Modern W. of A. v. Lane, 62 Neb. 89. Under these authorities, it was a question of fact for the jury to determine whether the appellant society waived the forfeiture imposed by this by-law, by accepting dues and assessments, with such knowledge on its part as was possessed by Fitzgibbons, the recording secretary of Unity Court.

In view of the character of the duties imposed upon the recording secretary by the by-laws of appellant, we think it is clear that it was the duty of Fitzgibbons to impart any information, such as he is alleged to have received from the father of the deceased, to his court at the next meeting, and to report the fact of such change in occupation to his superior officers in the society. Notice to him was therefore notice to the society. The evidence being conflicting as to just what information he did have, it was distinctly the province of the jury, who saw and heard the witnesses, to decide that question. We find no such facts or circum-

stances in the record as would warrant us in saying that the verdict in this respect is clearly and manifestly against the weight of the evidence.

It is, however, urged that Fitzgibbons and the father of the deceased acted in collusion. On this theory appellant requested the trial court to give an instruction referring to the conversation between O'Brien and the recording secretary, and telling the jury that if they believed from the evidence that O'Brien's father notified the recording secretary that his son was engaged in the prohibited occupation, and that the recording secretary "told the said father of O'Brien to keep still and say nothing about it, then and in that case, the defendant society would not be bound by the notice to the recording secretary." The court modified this sentence by inserting before the word "then" in the above quotation, the following: "and that it was the understanding between said O'Brien's father and said recording secretary that such fact was not to be reported." We think the modification was correct. Fitzgibbons, when called as appellant's witness, denied that he understood the matter as O'Brien had testified. Hence, without such modification, the court would have told the jury in effect that the mere statement of the recording secretary to O'Brien to "say nothing about it" would be conclusive on the question of waiver after full notice of the facts to the representative of the society. It is for the jury, and not the court, to find the facts, and the instruction would have been erroneous without the modification.

The court also refused an instruction offered by appellant, quoting substantially the language of the by-law regarding the duty of the financial secretary to receive payments, and that payments made to any other member were not payments to the society, until the money had been delivered to the financial secretary. There was no error in refusing this instruction, for the reason that the evidence was undisputed that all moneys paid to the recording secretary on behalf

of the deceased were, in fact, delivered to the financial secretary.

As to the alleged error regarding the proofs of death, Fitzgibbons, in response to questions regarding such proofs, testified that he followed the "usual course;" that he had the papers "filled out and sent them to the High Court." Apparently the only provisions in the certificate or by-laws regarding such proofs are those mentioned in the foregoing statement of the facts. In the absence of countervailing evidence, we think the showing made in this respect was *prima facie* sufficient.

The judgment of the County Court will be affirmed.

*Affirmed.*