DETERMINED IN THE

# FIRST DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

## DURING THE YEAR 1913.

---

## T. M. Dromgold, Defendant in Error, v. Royal Neighbors of America, Plaintiff in Error.

### Gen. No. 16,380.

1. FRATERNAL BENEFIT SOCIETIES—*payment of assessment by suspended member in impaired health.* Where the by-laws of a fraternal insurance organization provide that if a member suspended for failure to pay assessments shall pay arrearages within sixty days "and the member's health is not impaired," he shall be restored to membership, the health of the insured in such case is a material condition of the contract, and payment made while in impaired health does not restore membership.

2. FRATERNAL BENEFIT SOCIETIES—*waiver by local agent.* Under the rule in this state the local camp of a fraternal beneficiary society is the agent of the central camp, but when the by-laws limit the authority of the local recorder and expressly provide that his waiver of any provision shall not bind the society, such limitation of agency is not so unreasonable as to be held unlawful, and is binding on the insured.

3. FRATERNAL BENEFIT SOCIETIES—*members bound by rules and by-laws.* Under the statute and decisions it is well settled that members of fraternal beneficiary societies are bound by all lawful rules and by-laws.

### (1)

Error to the Municipal Court of Chicago; the Hon. McKENZIE CLELAND, Judge, presiding. Heard in this court at the October term, 1912. Reversed. Opinion filed January 27, 1913. Rehearing denied February 10, 1913.

E. A. ENRIGHT and A. W. FULTON, for plaintiff in error.

THOMAS G. VENT, for defendant in error.

MR. PRESIDING JUSTICE SMITH delivered the opinion of the court.

The plaintiff, here the defendant in error, brought suit in the Municipal Court of Chicago to recover from the defendant, here the plaintiff in error, one thousand dollars on a certificate of membership issued December 21, 1896, by the defendant, a fraternal beneficiary society organized under the laws of Illinois, to Ella Bell Dromgold as a member of Crystal Camp No. 468, Seneca, Illinois, payable on her death to the plaintiff, her husband, as beneficiary. On a trial before the Court a judgment for one thousand dollars was entered against the defendant, who comes here on writ of error.

Ella Bell Dromgold was a charter member of said camp and in her application to become a member thereof stated:

"I agree to make payment of all dues and assessments legally levied within the limit of time provided by the order's law and to conform in all respects to the laws, rules and usages of the order now in force or which may hereafter be enacted and adopted by the the same, and that this application and the laws of this order shall form the sole basis of my admission to and membership therein, and of the benefit certificate to be issued me by said Royal Neighbors of America; that * *. * my being suspended or expelled from or voluntarily severing my connection with the order, or the beneficiary department thereof, shall forfeit the rights of myself and that of my beneficiaries to any and all benefits and privileges therein or arising therefrom."

"Paragraph 7. Do you understand that the laws of this order now in force or hereafter enacted enter into and become a part of every contract of indemnity by and between the members and the order and govern all rights thereunder? Answer: Yes."

The said certificate signed by said Ella Bell Dromgold contained the following provision:

"If payments assessed against the person named in this Certificate are not paid to the Local Recorder on or before the first day of the month following the levy of the same, then this Certificate shall be null and void, and continue so until payment is made and the requirements of the Laws and Rules of this Fraternity have been complied with, in which event it shall become restored.   *   *   *

"I hereby accept the above Benefit Certificate, and agree to all conditions therein contained."

The January 1909 assessment was $1.20, and the last day for its payment was January 31, 1909. It was not paid until February 4th, 1909. The insured died March 13th, 1909, and the defendant refused to pay the beneficiary on the ground that the insured failing to pay the January assessment on or before the last day of January, she was thereby suspended; and not being in good health on February 4th, when payment of the said assessment was made, she was not thereby restored to membership in the said defendant society and the said certificate was therefore null and void.

The by-laws of the defendant provided:

"If a member neglect or fail to pay to the local camp recorder any regular or special assessment within the calendar month for which it is levied, such neglect or failure shall suspend the member, and during such suspension the benefit certificate of the member shall be null and void.

"MEMBERS, WHEN LIABLE TO SUSPENSION. If the member fail or neglect to pay an assessment to the local recorder within the limit of time provided for in these laws, the member shall stand suspended. During such suspension the benefit certificate of such member shall be void. The Supreme Recorder shall address to

all suspended members a notice of such suspension, together with a statement of the requirements for reinstatement; provided, that the giving of such notice of such suspension shall not be deemed to be a prerequisite of suspension and shall not have the effect of waiving suspension, or leaving the Society liable to such suspended member or his beneficiary or beneficiaries.

"How to REINSTATE BENEFICIAL MEMBERS. If arrearages of every kind are paid up within sixty days after suspension, together with current assessment, and one advance assessment, and the member's health is not impaired, the member shall thereby be restored to membership and his or her benefit certificate made binding as soon as such payment is received and recorded by the local camp recorder.

"REINSTATEMENT IF SUSPENDED MORE THAN SIXTY DAYS. Should a beneficial member be suspended more than sixty days and less than six months, and desire to reinstate, such suspended member shall make application for reinstatement in form prescribed by the Board of Supreme Managers, truthfully answering all questions therein propounded, accompanied by certificate of present good health, executed by the camp physician after a personal examination. If said statement and physicians certificate is approved by the Beneficiary Committee, and all arrearages since suspension, both to the local camp and Supreme Camp, together with current assessment and one assessment in advance, are paid, the member's certificate shall be fully restored and made binding as soon as the local camp recorder is notified by the Supreme Recorder. But thereafter the rate of assessment shall be for the age at reinstatement. If the suspension is for a longer period than six months, the member, if again admitted, must make application as a new member."

"No WAIVER OF ANY BY-LAWS. No officer of this Society nor any local camp officer, is authorized or permitted to waive any of the provisions of the laws of this Society which relate to the contract for the payment of benefits between the member and the Society, whether the same be now in force or hereafter enacted."

"RECORDER DECLARED TO BE AGENT OF CAMP. The Recorder of a local camp is hereby made and declared to be the agent of such camp, and not the agent of the Supreme Camp, and no act or omission on her part shall have the effect of creating a liability on the part of the Society or of waiving any right or immunity belonging to it."

The undisputed evidence was that the insured had been ill for some time previous to February 4th, and on that date she had diabetes and died therefrom on March 13th. Mrs. Wilcox was elected recorder of said camp in November, 1908. As such recorder it was her duty to receive all assessments. She had known of Mrs. Dromgold's illness for about three years. In November, after her election as recorder, the plaintiff had a talk with her and told her, "My wife is pretty sick and I probably might neglect to pay my dues," and asked Mrs. Wilcox to look after same and see that they were paid and he would repay her, to which she agreed. After paying said January assessment on February 4th no notice of suspension or communication of any kind was received from the defendant by the plaintiff or his wife prior to her death. It was further shown that it was the custom of Mrs. Wilcox, as recorder, and also the custom of other recorders for years previous thereto, to remit to the Supreme Recorder the assessments collected for a given month between the 5th and 10th of the month following, and that if any member paid an assessment for the previous month, before the assessments paid in were remitted to the Supreme Recorder, the same were accepted and said members were not reported suspended or any action taken thereon.

The recorder, Mrs. Wilcox, remitted to the defendant the assessment paid her February 4th, at which time the insured's health was seriously impaired, but no notice or information of same was given to the Supreme Recorder or other Supreme Officer.

The foregoing facts are not in dispute, and the question is the application of the law thereto.

Under the by-laws the assessment for January not being paid during that month, the insured stood suspended, and we think under all the facts and circumstances, that by the payment of the said assessment February 4th, the insured would have been restored to membership in good standing if her health had not been at that time impaired. That it was on the said date seriously impaired is clear, and it would seem that under the authority of Court of Honor v. Dinger, 221 Ill. 176, and Johnson v. Royal Neighbors of America, 253 Ill. 570, the insured was not, under the circumstances and the terms of her contract, restored to membership in good standing by the payment of her said assessment, unless there was a waiver of the condition that her health be not then impaired.

The plaintiff contends in an exhaustive and learned brief that under the well settled rule of this state announced in Jones v. Knights of Honor, 236 Ill. 113, with the authorities there given, that "the subordinate lodge or council of a fraternal benefit society is the agent of the supreme lodge or council, and that such subordinate lodge may waive forfeiture or suspension upon failure to pay assessments and dues promptly," the local camp was the agent of the supreme camp, the defendant, and the recorder of the local camp having knowledge of the impaired health of the insured and agreeing not to allow her suspension, and thereafter, with the said knowledge of the insured's impaired health, accepting and turning over to the defendant the assessment for January, the knowledge and conduct of the said recorder was that of the defendant, and it accordingly waived the provisions of the contract as contained in the by-laws as to the impaired health of the insured. The reply of the defendant is in substance that the by-laws expressly provided that the recorder of a local camp was not authorized and had no power to waive any of the laws of the defendant society or any of the defendant's rights, and the said by-laws being a part of the contract understood

and entered into by the insured, there could be no waiver through and by the said recorder of the said provision of the by-laws pertaining to the insured's good health, and the defendant having no knowledge of the insured's impaired health, the insured at the time of her death, because of her impaired health, stood suspended and the said certificate was void, and no right of recovery could be predicated thereon.

We are of the opinion that if the defendant, with knowledge of the impaired health of the insured, on February 4th accepted and retained the said assessment, it thereby waived the said condition requiring the insured's health be not impaired in order to be restored to membership. Under the rule of this state the local camp was the agent of the Supreme Camp, and we think that the defendant is liable herein, unless the limitation of the agency of the recorder of the local camp expressly made in the by-laws hereinbefore quoted was binding on the insured. The said by-laws were expressly made a part of the contract of insurance, and was so understood by the insured. The contract provided that upon a failure of the insured to pay her assessments during the month same were due and payable, she would stand suspended. This by-law was self-executing, so that without action by the defendant the insured was suspended February 1st for failure to pay the January assessment. Under the contract and the usual custom, if the insured was not in impaired health she would have been restored to membership in the defendant society upon the payment of the said assessment on February 4th. That the insured's health be not at that time impaired was a material condition of the contract. We think that the recorder of the local camp waived this condition, but that under the terms of the said contract of insurance by the express agreement of the parties the recorder had no authority or power to bind the defendant by the said waiver. To hold that the insured is not bound by the express terms of her contract, we must hold the

by-laws limiting the authority of said recorder invalid. We are advised of no decision so holding.

The statute of this state on Fraternal Beneficiary Societies (Chap. 73, Hurd's Stat. 1911), under which the defendant was organized and doing business, contains in section 258, *inter alia* the following: "The payments of such benefits in all cases being subject to compliance by the member with the contract, rules and laws of (the) Society." That members of the defendant society are bound by all lawful rules and by-laws is well settled. Scow v. Royal League, 223 Ill. 32, and authorities there cited. As a general proposition there is nothing unlawful in a principal limiting the authority of an agent, and a person dealing with the agent under an express agreement between the parties that the agent's authority is limited, will be bound thereby. So in the case at bar, if the limitation of the recorder's authority contained in the by-laws be not so unreasonable as to be held unlawful, it is binding on the insured. In Schmidt v. Supreme Tent Knights of Maccabees, 97 Wis. 528, the court held a similar by-law binding on the insured. To the same effect is Coughlin v. Knights of Columbus, 79 Conn. 218.

Much may be said for and against the reasonableness of the by-law in question. In theory the by-laws of a fraternal beneficiary society are for the common good and best interests of all its members. From a practical and business point of view, the interests of the officers of a subordinate lodge in the members of that particular lodge may be considered in the nature of things, generally speaking, of greater importance than and paramount to the interests of the society as a whole, and to hold that the officers of the subordinate lodge, as agents of the supreme lodge, could not be limited in authority, might work great injustice to other subordinate lodges, whose officers faithfully and conscientiously adhered to and enforced the rules and laws of the society, and might ultimately lead to the destruction of the organization. From a legal

O'Brien v. Chicago Junction Ry. Co., 177 Ill. App. 9.

aspect of the reasonableness of such a by-law we can see no good reason to hold that such a limitation of authority of the agency, when known and understood by the insured, is not subject to the operation of the ordinary rules applicable to agencies of the same general character.

We have not discussed the question of whether the recorder was the agent of the insured or the defendant, but consider the question on the assumption that she was the agent of the defendant society. Being of the opinion that the by-law in question limiting the authority of the recorder is a reasonable one and was binding on the insured, it follows that under the circumstances of the case at bar, the condition that the insured's health be not impaired was not waived by the defendant society, and therefore the insured was not a member of said defendant society at her death, and there can be no recovery on said certificate of membership.

*Reversed.*